**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Ramon GONZALEZ–LOPEZ,
Defendant–Appellee.**

No. 89–8093.

United States Court of Appeals,
Eleventh Circuit.

Sept. 7, 1990.

Julie E. Carnes, William R. Toliver, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellant.

Jake Arbes, Atlanta, Ga., for defendant-appellee.

Before FAY and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

COX, Circuit Judge:

In this appeal, the government contends that the district court misapplied the Sentencing Guidelines. Ramon Gonzalez–Lopez (Gonzalez), was convicted on various drug charges. At sentencing, the government sought to classify Gonzalez as a career offender pursuant to Sentencing Guidelines § 4B1.1 ("Guidelines") in part because he had several prior felony convictions. The district court concluded that

Gonzalez was not a career offender because it determined that none of his prior convictions qualified as crimes of violence within the meaning of section 4B1.2. Alternatively, the court held that even if Gonzalez was a career offender, it would depart downward from the career offender guideline range. The government appeals; we vacate and remand for resentencing.

## I. FACTS

Gonzalez was convicted after a jury trial of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846, possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a), and attempting to distribute cocaine in violation of 21 U.S.C. § 846. The presentence investigation report (PSI) determined that Gonzalez should be classified as a career offender under Guidelines § 4B1.1. The report concluded that this mandated a total offense level of 34, a criminal history category of VI, and a sentencing range of 262–327 months.

The PSI listed the following four prior felony convictions which putatively involved either violence or the threat of violence:

### CRIMINAL CONVICTIONS

| Date of Arrest | Charge/Agency | Date Sentence Imposed/Disposition |
|---|---|---|
| 07–20–78 (age 18) | Robbery by Force and Fear (# 78–1099A) Miami, FL. | 11–14–78 Adjudication withheld, 3 yrs. prob. |

The defendant was arrested in the company of two females immediately after they had stolen a lady's purse which contained $5.35. The defendant was represented by the public defender.

| 10–21–81 (age 21) | Armed Robbery (# 81–23607) Miami, FL. PD | 9–28–82 sentenced to 364 days, Dade County Jail, time served. |

The defendant was identified from a photo lineup as the perpetrator of a robbery at Pantry Pride supermarket and was arrested on above warrant issued on October 16, 1981. Court file is unavailable. Represented by attorney Goodman.

| 02–07–83 (age 23) | 1) Attempted Burglary of (# 83–3102B) occupied residence. 2) Obstruction of Justice by Disguised Person Miami, FL. PD | 1) Sentenced to 3 yrs. prob. Credit for 90 day time served. 2) No disposition. |

The defendant came to victim's apartment and knocked at the door. When victim came to the door she could see how the defendant was trying to open the door by force and held the door knob from inside. At that moment defendant and codefendant left. Victim called the police and, when the defendants were arrested, she identified them both as the offenders. A search of the defendant revealed two burglary tools and two lock picks.

| 09–23–81 (age 21) | 1) Burglary—unoccupied (# 81–24018) 2) Grand Theft (added charges) Miami PD. | Convicted and sentenced. No further disposition information available. Lost file. |

The defendant's fingerprints were found inside victim's apartment from which $450 in merchandise had been taken. The defendant admitted this offense to the probation officer and advised that he received a 3 year probated sentence. The defendant also stated that he was represented by counsel.

The PSI further noted that Gonzalez had been convicted of a non-violent felony offense in 1979 and several misdemeanors in 1982, 1983, and 1987. He was also arrested between 1978 and 1987 on charges of dealing with stolen property, grand theft, petit theft, possession of controlled substances,[1] disorderly conduct, obstructing police action by giving false information, and loitering and prowling. In addition, Gonzalez was the subject of an outstanding arrest warrant issued by the Chicago police in 1984 for failure to appear in connection with a marijuana charge.

The district court conducted three sentencing hearings, but only a transcript of the final hearing appears in the record on appeal. At the third sentencing hearing, Gonzalez argued that the circumstances underlying his robbery, armed robbery, residential burglary, and attempted burglary convictions showed they did not in fact involve violence or force and were therefore not crimes of violence as defined by section 4B1.2. He also argued that his armed robbery conviction was actually a simple robbery or lesser offense which was incorrectly listed[2] and that the attempted burglary was only a misdemeanor under Florida state law. Alternatively, assuming that the convictions satisfied the definition of a crime of violence and he was correctly labeled a career offender, Gonzalez argued that a downward departure should be granted because the career offender guideline failed to provide adequately for a situation where, as in his case, the prior offenses did not involve violence but were still sufficient to result in a guideline's range of 262–327 months incarceration.

The government argued that while section 4B1.2 authorizes a court to consider the elements of an offense required for a conviction, it does not permit review of the facts underlying each conviction. Alternatively, the government asserted that a downward departure was not permitted in Gonzalez's case because the guidelines had adequately taken his circumstances into account.

Relying on defense counsel's representation of the facts underlying Gonzalez's prior convictions, the sentencing court found that the 1978 robbery conviction and the 1981 burglary and armed robbery offenses "lack[ed] the requisite element of violence" (R6–67) to qualify as predicate crimes of violence under section 4B1.2. The judge further found that the 1983 attempted burglary was a misdemeanor under Florida law, or, alternatively, that the state had failed to sufficiently prove that it was actually a felony conviction. Based on these findings, the court found that Gonzalez was not a career offender within the meaning of section 4B1.1.

The district court further concluded that even if Gonzalez qualified as a career offender, a downward departure was warranted because the Sentencing Commission ("Commission") did not "adequately consider[ ]" (R6–68) a situation where a person with Gonzalez's criminal history could be sentenced to over 27 years. The court also concluded that sentencing Gonzalez as a career offender would be "grossly unfair and grossly excessive." (R6–68). The

---

1. In 1982 Gonzalez was convicted for methaqualude possession which resulted in 18 months probation. Although the government argued at the first two sentencing hearings that this was a § 4B1.1 predicate conviction, it was dropped from consideration during the final hearing because the court found that it was not "substantially similar" to those controlled substance convictions defined in § 4B1.2(2). The government requests this court to review this finding only if we determine that at least two other predicate crimes do not exist. Since we conclude that two predicate crimes do exist supporting a career criminal status, we do not reach the question of whether the drug conviction is a con-

trolled substance offense within the meaning of § 4B1.2(2).

2. At sentencing, defense counsel argued that the description of the conduct which resulted in this armed robbery conviction was erroneous. According to defense counsel, Gonzalez was arrested on a shoplifting charge and when the store manager appeared to identify Gonzalez, he recognized Gonzalez as the same man who had committed an armed robbery of the same store weeks prior. (R.6 19–20). The defendant contends that he was actually convicted of shoplifting and that the armed robbery charge was dropped.

court then calculated the total offense level at 16, which combined with an unchanged criminal history category of VI to produce a sentencing range of 46–57 months. Gonzalez received the maximum sentence under the new range, 57 months, followed by 3 years supervised release.

## II. DISCUSSION

On appeal the government attacks both of the district court's alternative findings. First, it contends that Gonzalez should have been classified as a career offender because his criminal history included at least two convictions which meet the definition of a crime of violence under section 4B1.2. As part of this argument, the government challenges the sentencing court's authority, under the guidelines, to consider the particular circumstances surrounding each offense in determining whether an offense qualifies as a predicate crime of violence. Second, the government asserts that the sentencing court improperly departed downward in sentencing Gonzalez.

### A. *Career Offender*

Section 4B1.1 of the guidelines provides: A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

*United States Sentencing Commission Guidelines Manual ("Guidelines Manual")* § 4B1.1. The only question in this case regarding Gonzalez's status as a career offender is whether he has at least two prior convictions for crimes of violence as required under section 4B1.1. The first step in answering this question, however, is to determine if the guidelines authorized the sentencing judge to inquire into the specific conduct involved in each prior conviction to determine if violence actually occurred. Indeed, we must establish the correct method of determining whether an offense is a crime of violence before deciding whether Gonzalez was convicted of at least two crimes of violence. Upon resolution of that threshold issue, we then decide whether at least two of Gonzalez's earlier offenses qualify as crimes of violence.

1. Permissibility of examining actual conduct behind offense

■ At the time of Gonzalez's sentencing,[3] guidelines section 4B1.2 stated that "[t]he term 'crime of violence' as used in this provision is defined under 18 U.S.C. § 16." 18 U.S.C. § 16 reads:

The term "crime of violence" means—

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16 (West Supp.1990). Section 16(a) is clear on its face. The phrase "as an element" only permits an examination of the statute under which the defendant was convicted to determine if the statute has as an ingredient the requisite use of force (or attempted or threatened use of force). *See United States v. Sherbondy,* 865 F.2d 996, 1005 (9th Cir.1988); *United States v. Headspeth,* 852 F.2d 753, 756 (4th Cir.1988).[4] When Congress uses a word

---

**3.** 18 U.S.C. §§ 3553(a)(4) and 3553(a)(5) instruct a sentencing court to consider the Commission's guidelines and policy statements "that are in effect on the date the defendant is sentenced."

**4.** The courts in *Sherbondy* and *Headspeth* analyzed a statute virtually identical to 18 U.S.C. § 16(a). The statute under scrutiny in those cases was 18 U.S.C. § 924(e)(2)(B). Subsection (i) of § 924(e)(2)(B) provides that a "violent felony" must have "as an element the use, attempted use, or threatened use of physical force against the person of another...." In both *Sherbondy* and *Headspeth* the courts concluded that the "element" language in the statute requires a sentencing court to focus upon the statutory elements of a crime, rather than upon

like "element" in a federal criminal statute without otherwise defining it, we assume that the word carries its accepted meaning in the criminal law. *Morrissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249–50, 96 L.Ed. 288 (1952). At common law the word "element" refers to a "constituent part[ ] of a crime which must be proved by the prosecution to sustain a conviction." *Black's Law Dictionary* 467 (5th ed. 1979). Determining the elements of a crime, therefore, involves a legal inquiry as opposed to a factual inquiry. In other words, the analysis of a crime under section 16(a) should focus on the statute which defines the offense—evidence establishing the particular conduct of the defendant on the day the crime was committed does not bear on that inquiry. Accordingly, under section 16(a) it was improper for the sentencing judge to examine the facts underlying Gonzalez's convictions.

■ Turning to section 16(b), we note that this court on a previous occasion has stated that the language "by its nature" embodied in section 16(b) "implies that the generic, rather than the particular, nature of the predicate offense is determinative in defining a crime of violence." *United States v. Cruz*, 805 F.2d 1464, 1470 (11th Cir.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987). In *Cruz* the government argued, as Gonzalez argues in this case, that we should "look at each offense on a case-by-case basis and determine whether or not it comes within the scope of section 16(b)." 805 F.2d at 1469. This, we believed, was tantamount to inquiring "whether the crime, *as committed, actually* created a substantial risk of harm." *Id.* (emphasis added). We dismissed the government's argument because we concluded that if Congress had intended section 16(b) to apply only to those situations where force in fact was used or violence in fact occurred, it could

simply have deleted the language "by its nature." *Id.*

■ We now extend our conclusions in *Cruz* to hold that section 16(b) contemplates a generic category of offenses which typically present the risk of injury to a person or property irrespective of whether the risk develops or harm actually occurs. Offenses within the scope of section 16(b) have as a commonly shared characteristic the potential of resulting in harm. Once the court determines that the defendant has been convicted of a crime that usually involves a risk of harm, the inquiry ends; it does not matter whether that risk has matured into actual harm. Thus, the sentencing judge was not permitted under section 16(b) to consider the particular circumstances surrounding the commission of the offense.

Our interpretation of the guidelines' definition of a crime of violence is consistent with the overall objectives of the guidelines themselves. The guidelines, at least in part, constitute an effort by the Commission to design a sentencing system that reduces disparities in the sentences of defendants convicted of similar crimes. *See* Ogletree, *The Death of Discretion? Reflections on the Federal Sentencing Guidelines*, 101 Harv.L.Rev. 1938, 1944 (1988). Taking into account the myriad of subtle differences in the commission of every recognized crime of violence would result in as many different sentences. We do not believe, therefore, that the Commission would adopt a definition of a crime of violence that would run counter to the purposes of the guidelines.

■ Moreover, requiring sentencing courts to conduct factual inquiries into the specific conduct underlying an earlier conviction would present significant practical problems. Witnesses may no longer be

---

the particular conduct of the defendant on the day the crime was committed.

18 U.S.C. § 924(e)(2)(B)(i) is identical to 18 U.S.C. § 16(a), except that § 16(a) refers to force against property as well as persons. This difference is insignificant for the purposes of this case. We conclude, therefore, that the findings in both *Sherbondy* and *Headspeth* provide

substantial guidance in our interpretation of § 16(a).

Coincidentally, in 1989 the Commission amended the definition of a crime of violence by deleting reference to 18 U.S.C. § 16. The amended definition tracks the definition of a "violent felony" found in 18 U.S.C. § 924(e)(2)(B).

available to testify, and even if they are, their testimony would be unreliable because they would be asked to describe events that occurred years previous. *United States v. Leonard*, 868 F.2d 1393, 1397 (5th Cir.1989). In most cases, documentary evidence also would provide little insight into the actual events giving rise to the conviction because rap sheets usually include nothing more than evidence of a conviction. We do not believe that Congress or the Commission were unmindful of these practical concerns and if they intended to require the sentencing court to participate in the equivalent of an ad hoc mini-trial, they would have provided at least some guidance. We hold that the guidelines prohibit the sentencing court from reviewing the underlying facts of a conviction to determine whether it is a crime of violence for career offender purposes.

### 2. Predicate Offenses

We now turn to an analysis of the elements or inherent nature of Gonzalez's prior convictions to determine if they qualify as crimes of violence. At sentencing the government produced evidence that Gonzalez previously had been convicted of four felonies including robbery, armed robbery, burglary of a dwelling, and attempted burglary. We conclude that Gonzalez's convictions for robbery and residential burglary are crimes of violence as described by section 4B1.2, and therefore, we need not consider the other two convictions.

■ Application Note 1 to section 4B1.2 specifically states that the term "crime of violence" includes the crime of robbery. *Guidelines Manual* § 4B1.2. In so listing the offense the Commission concluded that robbery meets section 4B1.2's definition of a crime of violence. No doubt the Commission recognized that robbery by its nature involves the threat of violence. As the First Circuit reasoned:

> Robbery typically involves a threat of violence. One making such a threat may

carry it out. Even if the threatener is only bluffing, others in the area fear his threat, and their efforts to evade the threat, to protect themselves, to apprehend the robber, or simple panic, some or all of which, in turn, may lead the robber to react violently, mean that "substantial" or "serious" risks of "physical" force or injury are typically present.

*United States v. McVicar*, 907 F.2d 1 (1st Cir.1990). We agree with the First Circuit and conclude that robbery fits within 18 U.S.C. § 16(b)'s definition of a crime of violence.

If we assumed, however, that by its nature robbery did not present the threat of force, Gonzalez's conviction would still fall within the guidelines' definition of a crime of violence. Gonzalez was convicted under Florida's robbery statute, which has an element "the use of force, violence, assault, or putting in fear." Fla.Stat.Ann. § 812.13(1) (West 1976).[5] We believe that this element is consistent with 18 U.S.C. § 16(a)'s requirement that a crime of violence have as an element "the use ... of physical force...." Florida's statute, therefore, describes robbery as a crime of violence consistent with the guidelines. Correspondingly, Gonzalez's conviction for robbery is a predicate offense for career offender purposes.

■ With respect to Gonzalez's residential burglary conviction, this court has already held that burglary of a dwelling constitutes a crime of violence under the guidelines. In *United States v. Davis*, 881 F.2d 973 (11th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 735, 107 L.Ed.2d 753 (1990), we were asked to decide whether a conviction for burglary of a dwelling under Fla.Stat.Ann. § 810.02 (1987) fit within the guidelines' definition of a crime of violence.[6] While recognizing that we could analyze that particular burglary of a dwelling conviction under either 18 U.S.C. § 16(a) or section 16(b), we chose to pro-

---

**5.** In relevant part Fla.Stat.Ann. § 812.13(1) (West 1976) reads:

> (1) "Robbery" means the taking of money or other property which may be the subject of

larceny from the person or custody of another by force, violence, assault, or putting in fear.

**6.** Like Davis, Gonzalez was convicted under Fla. Stat.Ann. § 810.02 (1987).

ceed under section 16(b). *Id.* at 976, n. 4. We concluded that any "burglary of a dwelling, by its nature, creates a substantial risk of physical force." *Id.* at 976. The reasoning was clear: whenever an intruder enters a dwelling, a person may be present inside, in which case the alarm to both the intruder and the resident may result in the use of physical force. *Id.; see United States v. Cruz,* 882 F.2d 922, 923 (5th Cir.1989) ("whenever a private residence is broken into, there is always a substantial risk that force will be used"); *United States v. Flores,* 875 F.2d 1110, 1111–13 (5th Cir.1989); *United States v. Pinto,* 875 F.2d 143, 144 (7th Cir.1989) ("No one has doubted for decades that residential burglary is a 'violent' offense, because of the potential for mayhem if burglar encounters resident."). We see no reason to depart from our holding in *Davis* and conclude that the sentencing judge improperly found that burglary of a dwelling is not a crime of violence under the guidelines.

Both of Gonzalez's convictions for robbery and residential burglary qualify as crimes of violence. Therefore, he has at least two prior felony convictions for a crime of violence under section 4B1.1 of the guidelines. Since all the other requirements for a finding of career offender status have been met, the sentencing court was incorrect in determining that Gonzalez is not a career offender.

### B. *Departure Downward*

The sentencing court also concluded that even if Gonzalez fit the guidelines' definition of a career offender, it would nonetheless depart downward from the applicable guideline range. The court articulated two separate grounds to support its decision to impose a sentence outside the applicable guideline. First, it concluded that a downward departure was required because Gonzalez's case presented circumstances that the Commission had not adequately considered in setting the sentencing range for career offenders. Second, the court departed because it believed that sentencing Gonzalez as a career offender would be grossly excessive and unfair. We consider these in turn.

 The Commission intends sentencing courts to treat each guideline as a carving out a "heartland" type case, that is "a set of typical cases embodying that conduct that each guideline describes." *Guidelines Manual* at 1.6; *United States v. Crawford,* 883 F.2d 963, 964–65 (11th Cir.1989); *United States v. Ryan,* 866 F.2d 604, 606–07 (3rd Cir. 1989). A sentencing court may impose a sentence outside the applicable guideline only if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b) (West Supp.1989). Stated otherwise, departure is reserved for "unusual" cases where there is something atypical about the defendant or the circumstances surrounding the commission of the crime which significantly differ from the normal or "heartland" conduct in the commission of the crime. *United States v. Williams,* 891 F.2d 962, 964 (1st Cir.1989). The appropriateness of departure, therefore, hinges upon a determination of what circumstances the Commission considered in formulating the guideline in question. *See United States v. Uca,* 867 F.2d 783, 786 (3d Cir.1989). Whether this case presents a circumstance that the Commission did not adequately consider in formulating the guideline is a question of law, hence, we exercise our plenary powers of review. *Ryan,* 866 F.2d at 610.

 Gonzalez argues that in adopting its definition of a crime of violence and incorporating it in the career offender guideline, the Commission did not adequately consider the distinction between crimes that involve the actual use of force and result in injury, and those that involve nothing more than the threat of force and do not result injury. The latter case, he claims, is a legitimate basis for a departure from the career offender guideline. Given the offenses in question in this case, Gonzalez asks us to find that the typical robbery or burglary of a dwelling does result in inju-

ry, rendering his case, where no injury resulted, "unusual." The government, on the other hand, argues that in drafting the career offender guideline, the Commission considered the distinction between crimes that result in injury and those that do not, and that the sentencing court could not depart. We agree with the government.

It is clear from the language of section 4B1.2 that the Commission considered the distinction between the use of force and the lesser threat of force when it formulated the career offender guideline. A crime of violence for career offender purposes can be either one which requires proof of the *"use,* attempted use, or *threatened* use of physical force ..." or one which "by its nature involves a substantial risk of physical force...." 18 U.S.C. § 16 (West 1989). Noticeably absent from the definition is any indication that the infliction of injury should be taken into account. The definition means what it says—the typical crime of violence does not have to result in violence, the mere threat of physical force or the risk of physical force is sufficient.

■ Furthermore, it would impute a serious lack of forethought on the part of the Commission to conclude that on the one hand a sentencing court is *prohibited* from reviewing facts underlying a conviction to determine whether it is a crime of violence when initially characterizing a defendant as a career offender, and on the other, to permit a review of the particular facts of each prior conviction to determine whether departure is warranted on the grounds that no injury resulted. If this were the case, those defendants characterized as career offenders would nonetheless receive radically disparate sentences. Such a result would be contrary to the intent of the guidelines. *See United States v. Aguilar–Pena,* 887 F.2d 347, 351–52 (1st Cir.1989). We conclude, therefore, as a matter of law, that the Commission considered the fact that crimes of violence do not always result in violence in calculating the sentencing range for career offenders.

Moreover, experience dictates that Gonzalez' convictions clearly fit within the "heartland" cases of robbery and resi-

dential burglary. The description of Gonzalez's robbery offense seems to suggest that no violence resulted. Most robberies, however, do not result in violence because the victim usually surrenders his property to prevent the infliction of harm to himself or to his property. One may only speculate what the victim of Gonzalez's robbery felt. Gonzalez also claims that his residential burglary is not, in fact, a crime of violence because no one was home and injury was impossible. This, however, ignores the fact that many residential burglaries take place when the dwelling is unoccupied and the risk of burglar confronting resident is minimal. Residential burglary is a crime of violence because of what might happen, not because of what actually does. Viewed through this lens, there is nothing idiosyncratic about either of Gonzalez's convictions—they are "heartland" cases of robbery and burglary of a dwelling.

At oral argument, Gonzalez relied heavily upon *United States v. Baskin,* 886 F.2d 383 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990), to support his argument that the sentencing court can depart if a review of the underlying facts of each prior conviction reveals that no violence actually occurred. We, however, reject the reasoning in *Baskin. Baskin* involved a prior conviction for robbery under Illinois law. The D.C. Circuit analyzed that robbery conviction under 18 U.S.C. § 16(a) to determine if it was a crime of violence for career offender purposes. Proceeding under the section 16(a) rubric, the court observed that "a crime is one of violence under section 16(a) if it is *defined* under state law as requiring proof of the requisite use of force (or attempted or threatened use of force....." 886 F.2d at 389 (emphasis added). The court then addressed the departure question and remanded the case "for consideration of the defendant's previous robbery conviction to determine whether or not it was *in fact* a crime of violence under 18 U.S.C. § 16(a)." *Id.* at 390 (emphasis added). The D.C. Circuit seems to suggest that a sentencing court may not consider the facts of a prior conviction when determining status as a career offender but that

it can review the facts of a prior conviction when determining the appropriateness of departure. We cannot believe that the Commission intended such a result. The grounds that Gonzalez urges for departure in this case depend upon an analysis of the underlying facts of the prior conviction—whether the offense actually resulted in harm—and, therefore, conflict with the definition of a crime of violence. As discussed previously, we believe that by adopting the definition of a crime of violence that it did, the Commission considered the distinction between the use of force and the threat of force and concluded that it was not meaningful for career offender purposes.

The sentencing court also departed downward on the alternative basis that to sentence Gonzalez as a career offender would result in an excessive sentence. While a sentence of 262–327 months may appear severe in Gonzalez's case, a court cannot depart because it believes a sentence is excessive. *See Aguilar-Pena*, 887 F.2d at 351–52. Implicit in the sentencing judge's statement that "it would be [a] grossly unfair and grossly excessive sentence to impose any sentence pursuant to the career offender status" (R6–68), is either disagreement with the government's effort to classify Gonzalez as a career offender or dissatisfaction with the guideline itself. Neither of these rationales, however, provide a legitimate basis for departure. *See United States v. Lopez*, 875 F.2d 1124, 1126 (5th Cir.1989). Once it has been determined that a defendant's conduct conforms to the "heartland" scenario of a particular guideline, the sentencing judge's discretion to impose a sentence outside the guideline range is seriously curtailed. *Aguilar-Pena*, 887 F.2d at 353; *see United States v. Palta*, 880 F.2d 636, 639–40 (2d Cir.1989). Therefore, the sentencing court erred in concluding that it could sentence Gonzalez outside the guideline range on the grounds that the sentence was simply too harsh.

7. On remand, the district court should decide whether Gonzalez has a prior felony drug conviction as described in 21 U.S.C. § 841 because,

## III. CONCLUSION

We conclude that Gonzalez qualifies for career offender status because he was convicted of at least two predicate crimes of violence. The sentencing court was not permitted to examine the underlying facts of each prior conviction in determining whether Gonzalez should be classified as a career offender. Furthermore, we hold that based upon the facts of this case, the sentencing court was precluded from departing from the career offender guideline. We recognize that the result in this case is arguably harsh. However, results of this kind are a consequence of any sentencing system that substitutes a fact sensitive inquiry by the sentencing court with categorized treatment of offenses.

We VACATE the sentence imposed and REMAND for resentencing with instructions to impose a sentence within the career offender guideline range.[7]

depending upon the outcome of that inquiry, Gonzalez may actually have an offense level of 32 as opposed to 34.