**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Russell Charles DAILEY, a/k/a Don Agrillo, Defendant–Appellee.**

No. 92–6910.

United States Court of Appeals, Eleventh Circuit.

July 5, 1994.

---

**67.** *United States v. Otero,* 890 F.2d 366, 367 (11th Cir.1989).

**68.** *See* Cameron's Presentence Investigation Report at ¶ 15.

**1324**

Jack W. Selden, U.S. Atty., James E. Phillips, Asst. U.S. Atty., Birmingham, AL, for appellant.

Connie W. Parson, Birmingham, AL, for appellee.

Before KRAVITCH and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

COX, Circuit Judge:

Russell Charles Dailey was convicted on one count of violating 18 U.S.C. § 1952(a)(3) (1988 & Supp. II 1990), interstate travel with

intent to carry on the unlawful activity of extortion, in the Northern District of Alabama in September 1992. In a recorded telephone conversation earlier that year, Dailey told the victim that he would "make sure you never walk again" if the victim did not repay money he owed Dailey.

The district court calculated an adjusted offense level of 25 for Dailey's actions under United States Sentencing Commission, *Guidelines Manual,* §§ 2E1.2, 2B3.2 (Nov. 1991) ("Guidelines" or "U.S.S.G."),[1] after sustaining the government's objection to a two point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The court found the criminal history category to be I, resulting in a guideline range of 57–71 months with supervised release of two to three years. *See* U.S.S.G. Ch. 5, Pt. A; U.S.S.G. § 5D1.2(b)(2).

The court then indicated that it would *sua sponte* consider downward departure from the Guidelines range on the grounds that (1) Dailey suffered from diminished capacity under U.S.S.G. § 5K2.13, p.s.; (2) the conduct of Dailey's victim contributed to provoking the offense, permitting departure under U.S.S.G. § 5K2.10, p.s.; and (3) the facts of Dailey's case fell outside the heartland of organized crime offenses "anticipated" by 18 U.S.C. § 1952 and U.S.S.G. § 2E1.2, permitting departure under U.S.S.G. Ch. 1, Pt. A(4)(b), p.s. The district court departed downward to an offense level of 15, with Dailey's criminal history category remaining I. This produced a Guidelines range of 18–24 months imprisonment with a supervised release period of two to three years. *See* U.S.S.G. Ch. 5, Pt. A; U.S.S.G. § 5D1.2(b)(2). The court sentenced Dailey to 18 months in prison and two years of supervised release.

The government appeals the district court's downward departure. The government argues that (1) the departure for diminished capacity was not permissible because Dailey was convicted of a "crime of violence;" (2) the victim's conduct did not provoke Dai-

---

**1.** The 1991 version of the Guidelines was in effect at the time of Dailey's offense and sentencing. *See* 18 U.S.C. § 3553(a)(4)–(5) (1988); *United States v. Wilson,* 993 F.2d 214, 216 (11th Cir.1993) (apply version of Guidelines in effect at time of sentencing unless more lenient sentence would result from application of version in effect at time of offense).

ley's actions; and (3) the absence of any connection between Dailey and organized crime was not an appropriate ground for departure. We address each of these arguments in turn, concluding that we must vacate Dailey's sentence and remand for resentencing.

### Standard of Review

■ We review the district court's departure from the prescribed Guideline sentencing range in three steps. *United States v. Weaver*, 920 F.2d 1570, 1573 (11th Cir.1991). First, we review de novo the district court's legal conclusions with regard to the availability of departure based upon a particular factor. *Id.* Second, we review the district court's underlying factual findings for clear error. *Id.* Finally, we review the departure for reasonableness. *Id.*

### Discussion

#### A. Departure for Diminished Capacity

■ One of the reasons given by the district court for its downward departure was Dailey's "diminished capacity—his one hundred percent mental type disability," referring to Dailey's status as a Vietnam War veteran suffering from posttraumatic stress disorder. Section 5H1.3 of the Guidelines states that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, except as provided in Chapter 5, Part K, Subpart 2 (Other Grounds for Departure)." U.S.S.G. § 5H1.3, p.s. The relevant section in Chapter 5, entitled *Diminished Capacity*, then provides:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13, p.s.

We have interpreted these two sections to mean that mental and emotional conditions may be relevant to sentencing in extraordinary instances, "but then only if the defendant committed a nonviolent crime." *United States v. Russell,* 917 F.2d 512, 517 (11th Cir.1990), *cert. denied,* 499 U.S. 953, 111 S.Ct. 1427, 113 L.Ed.2d 479 (1991). The government argues that Dailey's violation was not a "non-violent offense" or "nonviolent crime" because it fits the definition of a "crime of violence" in U.S.S.G. § 4B1.2.

Section 4B1.2 defines the term "crime of violence" for the purposes of U.S.S.G. § 4B1.1, which provides enhanced sentences for career offenders. According to section 4B1.2(1),

> The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1). Dailey's violation of 18 U.S.C. § 1952(a)(3), interstate travel with intent to carry on the unlawful activity of extortion, certainly qualifies as a "crime of violence" under section 4B1.2(1) because the threat of physical force is an element of the underlying unlawful activity, extortion.

The government argues that downward departure under U.S.S.G. § 5K2.13 was impermissible because Dailey's conviction of a "crime of violence" means that he did not commit a "non-violent offense." Thus, we must decide whether Dailey's "crime of violence," as that term is defined in section 4B1.2, can be considered a "non-violent offense" for the purpose of downward departure under section 5K2.13. While the answer might appear obvious at first blush, this question has produced a split among other circuits and a conflict within our own.

Most of the circuits that have addressed this question have concluded with little discussion that the terms "crime of violence" and "non-violent offense" are mutually exclu-

sive. Thus, they have held that downward departure under U.S.S.G. § 5K2.13 is not available when the defendant is convicted of a "crime of violence." *See United States v. Rosen*, 896 F.2d 789, 791 (3d Cir.1990); *United States v. Maddalena*, 893 F.2d 815, 819 (6th Cir.1989); *United States v. Borrayo*, 898 F.2d 91, 94 (9th Cir.1989).

A closely divided Seventh Circuit agreed with these decisions in *United States v. Poff*, 926 F.2d 588 (7th Cir.) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991). The *Poff* court noted that both sections 4B1.2 and 5K2.13 contain the same root word—"violence." *Poff*, 926 F.2d at 591.[2] The court reasoned that because the Guidelines are to be read as a whole, *see* U.S.S.G. § 1B1.1(i), "when the same word appears in different, though related sections, that word likely bears the same meaning in both instances." *Id.* Thus, the Commission's use of a positive construction in section 4B1.2 ("crime of violence") and a negative construction in section 5K2.13 ("non-violent") led the majority to conclude that "[t]he natural reading of these terms suggests that they are contrapositives." *Id.* at 592. The court noted the lack of any cross reference between sections 4B1.2 and 5K2.13 and the lack of any commentary suggesting a different meaning as further support for its position. *Id.*

The *Poff* dissenters reasoned that because the Guidelines were assembled as a unit and amended frequently so that they would operate as an "integrated whole," the choice of different phrases in sections 4B1.2 and 5K2.13 reflected an intent to give those phrases different meanings as well. *Id.* at 594. They asserted that the omission of a cross-reference between the two sections further supported this conclusion. *Id.* For the dissenters, the term "crime of violence" was a term of art because it referred to violence or the threat of violence as an element of the

offense charged, not to the actual occurrence of violence. "Non-violent offense" on the other hand, meant simply an offense "in which mayhem did not occur." *Id.* Thus, "[t]he prospect of violence ... sets the presumptive range; when things turn out better than they might, departure is permissible." *Id.* After an examination of the importance of mental capacity under both the deterrence and desert rationales for sentencing, the dissenters concluded that so long as mayhem did not occur a downward departure was permitted under section 5K2.13 despite the fact that the offense met the formal definition of a "crime of violence".

In *United States v. Chatman*, 986 F.2d 1446 (D.C.Cir.1993), the court agreed with the *Poff* dissenters, holding that the definition of "crime of violence" in U.S.S.G. § 4B1.2 should not control the application of U.S.S.G. § 5K2.13. With reasoning similar to that of the *Poff* dissenters, the *Chatman* court concluded that "the sentencing court must consider all the facts and circumstances of a case in deciding whether a crime is a 'non-violent offense' under section 5K2.13 of the Guidelines." *Id.* at 1453 (footnote omitted). The court noted, but did not rely upon, the fact that even if section 4B1.2 were to control section 5K2.13, the district court would still be permitted under *United States v. Baskin*, 886 F.2d 383 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990), "to examine the underlying facts of the offense in determining whether to grant a downward departure pursuant to section 5K2.13." *Id.* at 1453 n. 7.[3]

In *United States v. Russell*, this circuit rejected the argument Dailey makes here. 917 F.2d at 517. In that case, the court considered whether departure was allowed under U.S.S.G. § 5K2.13 for reduced mental capacity when the defendant had used an unloaded weapon in an armed robbery. We examined sections 5H1.3 and 5K2.13 and con-

---

**2.** The majority saw little significance in the fact that section 4B1.2 used the word in a prepositional phrase—"of violence," while section 5K2.13 used the adjectival form of the word—"violent." *Id.*

**3.** Judge D.H. Ginsburg concurred in the panel opinion, but stated his view "that the result in

this case would not obtain if *United States v. Baskin* ... were not the law of this circuit." *Id.* at 1454. He also noted that *Baskin* had been "persuasively criticized" by other circuits, including the Eleventh. *Id.* at 1455 (citing *United States v. Gonzalez–Lopez*, 911 F.2d 542, 550–51 (11th Cir.1990)).

cluded that downward departure for reduced mental capacity was permissible "only if the defendant committed a nonviolent crime." *Id.* Then we stated that "[t]he crime here, armed robbery, is a crime of violence regardless of whether the weapon Russell carried into the bank was fired or even loaded: the use or threatened use of force is an element of the offense. *Therefore, no departure is allowed.*" *Id.* (citations omitted) (emphasis added). Thus, we agreed with those circuits that found the terms "crime of violence" and "non-violent offense" mutually exclusive. *See id.* (citing *United States v. Spedalieri,* 910 F.2d 707 (10th Cir.1990), *Rosen,* and *Maddalena* ).[4]

As the D.C. Circuit noted in *Chatman,* however, we implicitly disagreed with this conclusion in *United States v. Philibert,* 947 F.2d 1467 (11th Cir.1991). In *Philibert,* the defendant was convicted of making a threatening telephone call. The district court concluded that it could not lawfully consider downward departure under U.S.S.G. § 5K2.13. *Id.* at 1469. Without referring to *Russell* or acknowledging that the offense fit the section 4B1.2 definition of a "crime of violence" because the threat of violence was an element of offense, we stated that the defendant's "telephone call was a 'non-violent crime,'" and held that a downward departure would have been permissible under section 5K2.13. *Id.* at 1471.

We find no way to reconcile *Russell* and *Philibert. See generally United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir.1993) (listing several methods for reconciling an intracircuit conflict of authority). The conflict here is real, not merely apparent. In *Russell* we held that the district court could not depart under U.S.S.G. § 5K2.13 because armed robbery fit the definition of a "crime of violence." In *Philibert,* we stated that a threatening phone call, which also fits the U.S.S.G. § 4B1.2 definition, was nonetheless a non-violent crime warranting consideration

of downward departure. Any distinction based upon the facts of these cases would be unprincipled, and there has been no intervening Supreme Court authority to explain the conflict.

When there is no method for reconciling an intracircuit conflict of authority, "the earliest panel opinion resolving the issue in question binds this circuit until the court resolves the issue en banc." *Clark v. Housing Auth. of Alma,* 971 F.2d 723, 726 n. 4 (11th Cir.1992). Thus, *Russell* is controlling authority in this case and downward departure was not permissible for reduced mental capacity under U.S.S.G. § 5K2.13 after Dailey was convicted of a "crime of violence."

**B. Departure Based Upon the Victim's Conduct**

■ The second basis for the district court's downward departure was the victim's wrongful conduct as a provocative factor. U.S.S.G. § 5K2.10. Although departure on this basis is not normally applicable to a "non-violent offense," it is available for violent offenses. *See United States v. Olson,* 931 F.2d 1250, 1252 (8th Cir.) (U.S.S.G. § 5K2.10 contemplates a violent offense), *cert. denied,* —— U.S. ——, 112 S.Ct. 243, 116 L.Ed.2d 198 (1991). Because we have determined that Dailey's offense was a crime of violence under the Guidelines, departure on this basis was not improper.

The government argues, however, that the victim's conduct was insufficient to "provoke" Dailey's offense, citing *United States v. Bigelow,* 914 F.2d 966 (7th Cir.1990), *cert. denied,* 498 U.S. 1121, 111 S.Ct. 1077, 112 L.Ed.2d 1182 (1991). In *Bigelow,* the Seventh Circuit found the victim's unpleasant voice and demeanor insufficient to justify extortion. *Id.* at 975. In that case the victim had incurred legitimate debts, but refused to repay them, wrote bad checks to his creditor, and attempted to block the entry to his home when bill collectors "visited" him. *Id.* at 969. The

---

4. *Russell* also relied on our opinion in *Gonzalez-Lopez,* where we disagreed with the D.C. Circuit's opinion in *Baskin* and rejected an argument that departure from the Guidelines was permitted when a defendant committed a "crime of violence" if the district court examined the underlying facts of the crime and determined

that violence did not actually occur. We concluded in *Gonzalez-Lopez* that "the Commission considered the distinction between the use of force and the threat of force and concluded that it was not meaningful for career offender purposes." 911 F.2d at 551.

bill collectors beat the victim·in the presence of his family and subsequently placed several phone calls threatening the victim and his family if the debt were not repaid. *Id.*

In this case, however, the evidence suggested that Dailey's victim had defrauded him out of tens of thousands of dollars. Dailey only threatened physical harm after he and his family came under financial distress. Dailey's actions were much less extreme than those in *Bigelow*, while those of his victim were far more egregious and provocative. We cannot say that the district court clearly erred in finding that the conduct of Dailey's victim contributed significantly to provoking his offense.

### C.  Departure for Offense Outside the Proscribed Heartland

■ The third ground cited by the district court for its departure from the applicable Guidelines range was: "I cannot bring myself to believe that this is a case within the heartland that is anticipated by this particular statute." R.9 at 15 (referencing 18 U.S.C.A. § 1952 note 13 (West 1984)). The Sentencing Commission intended the courts to consider each section of the Guidelines as "carving out a 'heartland,' a set of typical cases embodying the conduct each guideline describes." U.S.S.G. Ch. 1, Pt. A(4)(b), p.s. However, the Commission also wrote that "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.*

It is true that the fight against organized crime was the main impetus for enacting 18 U.S.C. § 1952, the Travel Act. *United States v. Perrin,* 580 F.2d 730, 733 (5th Cir. 1978), *aff'd,* 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979).[5] We have also noted, however, that this does not mean that only offenses typically associated with organized crime were outlawed by the Travel Act. In *Perrin,* the court rejected a defendant's argument that the Travel Act only proscribed offenses "typically associated with the under-

world or organized crime," *id.* at 733, stating that "[m]embership in organized crime is not an element of the offense." *Id.* at 733 n. 4; *see* Committee on Pattern Jury Instructions, District Judges Ass'n of the Eleventh Circuit, *Pattern Jury Instructions (Criminal Cases),* Offense Instr. No. 48 (1985); Federal Judicial Ctr., *Pattern Criminal Jury Instructions,* Instr. No. 101 (1987); 2 Edward J. Devitt et al., *Federal Jury Practice and Instructions,* § 46.03 (4th ed. 1990).

Congress chose to attack organized crime through selectively defining the term "unlawful activity." Congress made certain offenses in areas typically associated with organized crime, *i.e.,* gambling, liquor, narcotics, and prostitution, "unlawful activit[ies]" only if engaged in by a "business enterprise." 18 U.S.C. § 1952(b)(i)(1). "This requirement was designed to focus the Act upon violations committed by organized crime." 2 Leonard B. Sand et al., *Modern Federal Jury Instructions* ¶ 60.01, at 60–35 (1993) (footnote omitted). Congress chose to omit the "business enterprise" element from certain other offenses such as extortion, however. 18 U.S.C. § 1952(b)(i)(2), (3). With these other offenses, "the government need not prove any connection between the local offense and an ongoing 'business enterprise' to make out a Travel Act offense, and may rely on a single act of extortion." *United States v. Gooding,* 473 F.2d 425, 427 (5th Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973). Moreover, Congress rejected an amendment by the House Judiciary Committee that would have limited the Act's proscription of extortion to extortion in connection with gambling, liquor, narcotics, or prostitution. *Compare* 18 U.S.C. § 1952(b) as passed in the Travel Act, Pub.L. No. 87–228, 75 Stat. 498 (1961) (current version at 18 U.S.C. § 1952 (1988 & Supp. II 1990)) *with* the House Judiciary Committee's proposed version in H.R.Rep. No. 966, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.C.C.A.N. 2664. Dailey's lack of involvement with organized crime does not exempt him from punishment under the Act.

---

5.  In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the

former Fifth Circuit handed down prior to October 1, 1981.

That Dailey's actions fall within the conduct proscribed by the Travel Act, however, does not necessarily mean that they also fit within the heartland of offense conduct contemplated by the Guidelines. If, in drafting U.S.S.G. § 2E1.2, the Sentencing Commission considered offenses associated with the underworld or organized crime to be the heartland of the conduct proscribed by the Act, then an offense not associated with organized crime might merit downward departure as "an atypical case." U.S.S.G. Ch. 1, Pt. A(4)(b), p.s.

By the time the Guidelines took effect in 1987, one commentator had characterized the Travel Act as "a mainstay of federal prosecutors. The Travel Act has been employed in such diverse prosecutions as organized crime infiltration of legitimate business, smuggling and distribution of cocaine, misconduct of state and federal elected officials, illegal drug and prostitution activities of motorcycle gangs, and even attempts to establish a nationwide 'Hooker's Union.'" Barry Breen, *The Travel Act (18 U.S.C. § 1952): Prosecution of Interstate Acts in Aid of Racketeering*, 24 Am.Crim.L.Rev. 125, 125–26 (1986) (footnotes omitted). The Supreme Court had noted that the Act was not limited to the interstate management of organized crime, *Erlenbaugh v. United States*, 409 U.S. 239, 247 n. 21, 93 S.Ct. 477, 482 n. 21, 34 L.Ed.2d 446 (1972), and several circuits had agreed that association with organized crime was not required to establish a Travel Act violation. Breen, *supra*, at 127 & n. 18 (citing *United States v. Burchinal*, 657 F.2d 985, 996 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); *Perrin*, 580 F.2d at 733 n. 4 (1978); *United States v. Polizzi*, 500 F.2d 856, 874 n. 20 (9th Cir.1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *United States v. Roselli*, 432 F.2d 879, 885 (9th Cir.1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); *United States v. Barnes*, 383 F.2d 287, 289 n. 2 (6th Cir.1967), *cert. denied*, 389 U.S. 1040, 88 S.Ct. 780, 19 L.Ed.2d 831 (1968)).

Given the widespread use of the Travel Act in federal prosecutions and judicial approval of its application to offenses not associated with organized crime, it is difficult to presume that the Commission did not consider the fact that organized crime would be behind some Travel Act violations, but not others. Yet, we find no indication from the Guidelines or commentary that the Commission intended any sentencing distinction under U.S.S.G. § 2E1.2 based upon association with organized crime. Nothing indicates that the Commission wished to make offenses associated with organized crime the heartland of section 2E1.2. This silence in the face of the status of the law at the time of drafting leads us to conclude that it was improper for the district court to depart downward from the Guidelines because it did not believe that Dailey's conduct fell within the heartland contemplated by the Travel Act or U.S.S.G. § 2E1.2.

### Conclusion

The district court stated three grounds for its downward departure from the Guidelines range in this case: (1) Dailey suffered from diminished capacity; (2) the conduct of Dailey's victim contributed to provoking the offense; and (3) the facts of Dailey's case fell outside the heartland of organized crime offenses "anticipated" by 18 U.S.C. § 1952 and U.S.S.G. § 2E1.2. For the reasons stated above, we conclude that the district court's departure on the first and third grounds was improper. Its departure on the second ground, the victim's conduct, was not improper, however.

Because we cannot discern to what extent the district court would have departed had it not considered the first and third grounds, we VACATE Dailey's sentence and REMAND to the district court for resentencing not inconsistent with this opinion.

VACATED and REMANDED.