62 F.3d 1418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rick Louis ROSS, Defendant-Appellant.
 No. 94-6269.
 United States Court of Appeals, Sixth Circuit.
 Aug. 3, 1995.
 
 Before: MERRITT, Chief Judge, BROWN and MARTIN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Rick Louis Ross appeals after pleading guilty to eleven counts of armed bank robbery in violation of 18 U.S.C. Secs. 2113(a) and (d). The district court sentenced Ross to prison for seven years, three months, followed by a five year period of supervised release, and ordered Ross to pay $57,389.43 in restitution. Claiming that the district court erred in refusing to depart downward under United States Sentencing Guidelines Sec. 5K2.13 p.s. (Nov. 1994), Ross's appeal is now before us. Because we believe that the district court correctly applied the guidelines in refusing to depart downward we AFFIRM the decision of the district court.
 
 
 2
 The agreed factual basis for Ross's guilty plea contains the following information. On April 19, 1994, Ross drove from his home in Chattanooga, Tennessee, to Maryville, Tennessee, where he entered Union Planters Bank. At the time, Ross was carrying a newspaper and what he claims was a black toy handgun. Ross went to the counter, showed the teller the toy gun and demanded money. The teller handed over approximately $4,000.00. Ross took the money and left the bank. He then got into his Heep, left the scene, drove onto Highway 332, and tossed the gun out of the window. The gun was never recovered.
 
 
 3
 Soon after Ross left Union Planters Bank, police officers began a pursuit. Attempting to elude the police, Ross led four police cars on a high speed chase through a residential area and then onto Highway 321. After side-swiping a police car, Ross collided with another police car, totalling it and causing minor injuries to the officer driving that car. Ross stopped after the collision and attempted to flee on foot. However, the police captured and arrested him.
 
 
 4
 F.B.I. agents later questioned Ross and he admitted that between August 1991 and April 18, 1994, he had robbed ten other banks in the three-state area of Tennessee, Alabama and Georgia. Ross stated that he had used either a toy gun or a fake bomb in all ten of the robberies. The police recovered fake "bombs" from Ross's possessions and a can of black spray paint, which he claimed he used to paint the toy gun used in the Union Planters Bank robbery, but otherwise did not find any toy guns or other evidence to corroborate Ross's claim that he did not use actual weapons. Ross was not indicted under 18 U.S.C. Sec. 924(c) for using or possessing a firearm in connection with a crime of violence. However, as part of the plea agreement, Ross agreed that the objects he used in the robberies would be considered "dangerous weapons" for purposes of calculating his sentence under the sentencing guidelines.
 
 
 5
 Ross was sentenced on September 7, 1994. The court had available to it at that time reports from two psychologists that provided proof from which the district court could have concluded that Ross's actions were the result of "substantially reduced mental capacity." The district court held that it could not consider this proof in connection with Ross's motion for downward departure under Section 5K2.13 p.s., because armed bank robbery was not a nonviolent offense "by definition." Therefore, the court concluded that it was not able to consider the evidence of Ross's claim of reduced mental capacity.
 
 
 6
 Ross argues on appeal that because he used a toy gun and fake bombs to commit the bank robberies, the facts of his crimes show that he did not intend to threaten any bodily harm and in fact no psychological or physical injuries were reported by the bank personnel involved. Ross argues that he meets all of the criteria to allow a court to depart downward under Section 5K2.13 p.s., including the "nonviolent offense" requirement, if the court considers the facts of his crimes and not the definition of a violent crime under the career offender provision of USSG Sec. 4B1.2(1)(i). To the contrary, the United States contends that our decision in United States v. Maddalena, 893 F.2d 815 (6th Cir. 1989), cert. denied, 502 U.S. 882 (1991), controls the disposition of this case and requires us to agree with the district court that Ross committed a violent crime. The United States also argues that this Court does not have jurisdiction to review a district court's refusal to depart downward.
 
 
 7
 This Court may review a district court's refusal to depart downward only in certain cases, 18 U.S.C. Sec. 3742, such as where a district court incorrectly believes that it lacks any authority to consider a defendant's mitigating circumstances as well as the discretion to deviate from the guidelines. Maddalena, 893 F.2d at 818. Here, we have a slightly different problem occasioned by the district court's refusal to depart downward. The question we must decide is whether the district court correctly applied Section 5K2.13 p.s., in light of our decision in Maddalena.
 
 
 8
 Policy statement 5K2.13[1] permits a court to a depart downward for diminished capacity in limited circumstances. Before a court can depart downward under Section 5K2.13 p.s., the crime the defendant committed must have been a nonviolent offense. Section 5K2.13 p.s. provides:
 
 
 9
 If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from the voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which the reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.
 
 
 10
 In this case, the district court referred to the definition of a "crime of violence" as found in Section 4B1.2(1)(i) in determining whether the bank robberies committed here were "non-violent offenses." Section 4B1.2(1)(i) defines "crime of violence" for purposes of determining the sentence of a career offender. Section 4B1.2(1)(i) provides that a crime of violence is "any offense under federal or state law punishable by imprisonment for a term exceeding one year that...has as an element the use, attempted use, or threatened use of physical violence against the person of another" (emphasis added). Thus, by referring to this provision, the district court concluded that Ross had committed a violent offense because, despite the fact that his weapons were harmless, the bank robberies "carr[ied] with them a very real potential for violence." The district court then refused to depart downward in sentencing Ross.
 
 
 11
 The district court's decision is consistent with this Court's decision in Maddalena. There, we concluded that a bank robber dressed in a ski mask and disguise who placed a knife on the teller's counter and said, "hurry up now, I don't want anyone to get hurt," had committed an offense that was not "nonviolent" because it met the guidelines definition of a "crime of violence" under USSG Sec. 4B1.2(a). The Court in Maddalena looked to Section 4B1.2(a) of the guidelines, which defined a "crime of violence" as one involving the use, attempted use, or threatened use of physical force against another or her property. The Court then upheld the district court's refusal to depart downward because the defendant had threatened to use physical force during the armed robbery.
 
 
 12
 Thus, we do not permit departure where a person commits a "crime of violence" as defined under the career criminal provision in Section 4B1.2(1)(i), which is a crime where physical force is threatened. Such a crime cannot be a "nonviolent offense" for purposes of Section 5K2.13. See United States v. Wilson, 920 F.2d 1290 (6th Cir. 1990) (district court was correct in not departing downward under Section 5K2.13 based on probation officer's conclusion that the "use of interstate facilities for a murder-for-hire does not constitute a non-violent offense"). Since our decision in Maddalena, a majority of the circuits has concluded that the United States Sentencing Commission intended the definition of a "crime of violence" found in Section 4B1.2(1)(i) to be used to determine what constitutes a "non-violent offense" for purposes of Section 5K2.13 p.s. United States v. Dailey, 24 F.3d 1323, 1327 (11th Cir. 1994) (citing United States v. Russell, 917 F.2d 512, 517 (11th Cir. 1990), cert. denied, 499 U.S. 953 (1991)); United States v. Poff, 926 F.2d 588 (7th Cir.) (en banc), cert. denied, 502 U.S. 827 (1991); United States v. Rosen, 896 F.2d 789 (3d Cir. 1990); United States v. Spedalieri, 910 F.2d 707 (10th Cir. 1990); United States v. Borrayo, 898 F.2d 91 (9th Cir. 1989). A minority--the District of Columbia Circuit and the Fourth Circuit--has decided that a district court should not consider whether the crime is a "crime of violence" for purposes of sentencing career offenders, Section 4B1.2(1)(i), but should examine the facts of each case and make a determination as to whether the crime was a "nonviolent offense." United States v. Weddle, 30 F.3d 532 (4th Cir. 1994); United States v. Chatman, 986 F.2d 1446 (D.C. Cir. 1993).
 
 
 13
 Were this panel asked for the first time to decide whether an offense qualifying as a "crime of violence" under Section 4B1.2(1)(i) could also be a "nonviolent offense" for purposes of departure pursuant to Section 5K2.13 p.s., we might decide the question differently. However, while the panel in Maddalena did not extensively analyze this issue and did not explicitly consider whether Congress's purpose in providing leniency to defendants with reduced mental capacity might warrant considering the particular facts of the offense committed, the holding is controlling on us.
 
 
 14
 JUDGMENT AFFIRMED.
 
 
 
 [1]
 Although this provision is a policy statement, the Congress and the Supreme Court have made it clear that sentencing guideline policy statements are not advisory. While the policy statements are written as guides to aid the district court in exercising its discretion, a misapplication of a policy statement can be grounds for reversal. See USSG Sec. 1B1.7 (stating that commentaries and policy statements have the same legal effect and that it is reversible error for courts to incorrectly apply commentary) (citing 18 U.S.C. Sec. 3742); see also 18 U.S.C. Sec. 3553(a)(5) (stating that policy statements are a factor to be considered in imposing sentence); Stinson v. United States, 113 S. Ct. 1913, 1917 (1993) (observing that "[t]he principle that the Guidelines Manual is binding on federal courts applies as well to policy statements.")