UNITED STATES of America, Plaintiff–Appellant,

v.

Paul Richard RUSSELL, Defendant–Appellee.

No. 89–8920.

United States Court of Appeals, Eleventh Circuit.

Nov. 20, 1990.

Julie E. Carnes, Appellate Chief, Gerrilyn G. Brill, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellant.

Michael A. Kessler, Atlanta, Ga., (court-appointed), for defendant-appellee.

Before EDMONDSON and COX, Circuit Judges, and WISDOM *, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

The government appeals from a sentence imposed under the Sentencing Guidelines. Defendant Paul Richard Russell pled guilty to two counts: (1) armed bank robbery, in violation of 18 U.S.C. § 2113(a) & (d); and (2) using or carrying a deadly weapon during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c). In the original sentencing hearing, the district judge ruled unconstitutional the Sentencing Reform Act of 1984, Pub.L. 98–473, 98 Stat. 1837, 1987 (1984), and imposed sentence under pre-existing law. After the Supreme Court upheld the constitutionality of the guidelines in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), we vacated the original sentence and remanded for sentencing under the guidelines. *See United States v. Russell*, 880 F.2d 419 (11th Cir.1989).

Upon remand, the district court reimposed virtually the same aggregate sentence: (1) for armed bank robbery, one year of probation; (2) for using or carrying

* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

a deadly weapon during commission of a crime of violence, five years of imprisonment as mandated by 18 U.S.C. § 924(c), and an additional five years of supervised release, to run consecutively to the probation imposed under the armed robbery count. The sentence under § 924(c) is unchallenged. The sentence of one-year probation for the count of armed robbery represented an 11-level departure from the applicable guideline range of 24–30 months. The government appeals the sentence of one-year probation for armed robbery as an unwarranted departure from the applicable guideline range. 18 U.S.C. § 3553(b). We agree and accordingly VACATE the sentence and REMAND for resentencing within the applicable guideline range.

## I.

Defendant Russell and his co-defendant, Leslie R. Ramey, drove in Russell's car to a bank in Marietta, Georgia. Though he had resisted earlier suggestions by Ramey that the two commit armed robbery, Russell agreed on this occasion, at least partially influenced by a smaller-than-expected paycheck and the need for additional money during the Christmas season. Upon urging by Ramey, Russell agreed to carry Ramey's gun into the bank and commit the robbery, while Ramey waited in the getaway car. Russell has said that he had not expected to carry a gun into the bank and that he insisted that the bullets be removed before he committed the robbery. Russell walked into the bank and pulled out the revolver, demanding that the tellers fill a bag with money. After receiving the cash, Russell left the bank. Dye bombs that the tellers had placed in the bag were activated outside the bank. The smoke and fumes from the dye bombs alerted a citizen who wrote down the tag number of the getaway vehicle, leading to the capture of both Russell and Ramey.

At the first sentencing hearing, Russell introduced the testimony of Dr. Randi Most, a clinical psychologist, who had evaluated Russell while Russell was incarcerated. Dr. Most diagnosed defendant as having a "dependent personality disorder," characterized by dependent and submissive behavior. Dr. Most further testified that persons afflicted with this disorder often volunteer to do unpleasant things to win approval, but the doctor noted that Russell was not retarded and could distinguish between right and wrong. The district court concluded that Russell's offense of armed robbery "would not have come about except for his dependent relationship with the co-defendant," though the court did accept Russell's concession that he also was influenced by his desire for additional money during the Christmas season.

After we vacated the first sentence—imposed under pre-existing law because the district judge had found the Sentencing Guidelines to be unconstitutional—the district judge reimposed virtually the same sentence,[1] though the judge asserted that he was acting pursuant to the guidelines. Applying the Sentencing Guidelines then in effect to the armed robbery count, the district court properly calculated an adjusted offense level of 17, a criminal history category of I, and an appropriate guideline range of 24–30 months.[2] Nevertheless, the

---

**1.** In the first sentencing hearing, the district court imposed the following sentences:

(1) 18 U.S.C. § 2113(a) & (d): five-year suspended sentence, five years of probation;

(2) 18 U.S.C. § 924(c): five years imprisonment, as mandated by statute.

In the second sentencing hearing, the district court shuffled the respective sentences of probation and supervised release, but the resulting aggregate sentence included only one additional year of probation: five years of imprisonment, five years of supervised release, and one year of probation.

**2.** 18 U.S.C. §§ 3553(a)(4) and (a)(5) instruct a sentencing court to consider the Commission's

guidelines and policy statements "that are in effect on the date the defendant is sentenced." See United States v. Gonzalez-Lopez, 911 F.2d 542, 546 n. 3 (11th Cir.1990). The district court appears to have applied the June 1988 version of the guidelines, the version in effect when Russell was sentenced.

Under then-applicable guidelines, the base offense level for robbery was 18. See United States Sentencing Commission, Sentencing Guidelines and Policy Statements, § 2B3.1(a) (April 1987). That base offense level was then adjusted upward by one level due to the amount of money taken ($9,378.00), and adjusted downward by two levels due to the defendant's ac-

district judge departed downward 11 levels in imposing only one year of probation, accepting the defendant's argument that his offensive conduct was causally related to his dependent personality disorder.

## II.

On appeal the government challenges the district court's authority to depart from the guidelines in this case and, alternatively, the degree to which the court departed from the applicable guideline range of 24–30 months. Because we conclude that the district court was unauthorized to depart from the applicable guideline range, we need not address the degree of the departure.

One of the main goals of the Sentencing Reform Act of 1984 was the achievement of a high degree of uniformity in federal sentencing, to "narrow[ ] the wide disparity in sentences imposed by different federal courts for similar conduct by similar offenders." U.S.S.G. Ch. 1, Pt. A, Introduction 3; *see* 28 U.S.C.A. § 991(b)(1)(B) (West 1985). The guidelines represent the Sentencing Commission's attempt to carry out Congress's aims; and "[i]t follows inexorably that, to implement the guidelines properly, courts must bear these goals in mind. Among other things, courts must remember the importance which Congress, and the Commission, attached to ensuring that like situations are treated alike." *United States v. Williams*, 891 F.2d 962, 963 (1st Cir.1989). Along these lines, we recently have stressed the Commission's intention that "sentencing courts [ ] treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. Ch. 1, Pt. A, Introduction 4(b) (quoted in *United States v. Gonzalez–Lopez*, 911 F.2d 542, 549 (11th Cir.1990) (Cox, J.)).

Congress has authorized sentencing outside the applicable guideline only if "the court finds there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consider-

ation by the Sentencing Commission in formulating the guidelines." 18 U.S.C.A. § 3553(b) (West Supp.1990). As a result, "[t]he appropriateness of departure ... hinges upon a determination of what circumstances the Commission considered in formulating the guideline[s] in question." *Gonzalez–Lopez*, 911 F.2d at 549 (citing *United States v. Uca*, 867 F.2d 783, 786 (3d Cir.1989)); *see also United States v. Williams*, 891 F.2d at 964; *United States v. Aguilar–Pena*, 887 F.2d 347, 350 (1st Cir.1989). Whether this case presents circumstances inadequately considered by the Commission in formulating the pertinent guidelines is "a question of law, hence, we exercise our plenary powers of review." *Gonzalez–Lopez*, 911 F.2d at 549 (citing *United States v. Ryan*, 866 F.2d 604, 610 (3d Cir.1989)).

The district judge pointed to no specific justifications within the guidelines for his decision to depart; but, some potential sources of authorization are discernible from the sentencing transcript, as well as from arguments by defendant and the government. We will discuss these in turn.

### A. *Defendant's Dependent Personality Disorder*

The district judge indicated that he imposed only one year of probation for the armed robbery count because, at least in part, "the offense would not have come about except for [Russell's] dependent relationship with the co-defendant." Defendant contends that departure from the guidelines was authorized because of his dependent personality disorder, either as duress or coercion under section 5K2.12, or as a factor unconsidered by the Commission. The government argues that personality disorders like that afflicting the defendant were adequately considered by the Commission in sections 5H1.3 and 5K2.13.

#### 1. *Coercion or Duress*

 Though departure is justified only by the existence of mitigating circum-

---

ceptance of responsibility, yielding an adjusted offense level of 17. Russell had no prior criminal history, resulting in a criminal history cate-

gory of I. Applying the Sentencing Table, the appropriate guideline range was 24–30 months.

stances inadequately considered by the Commission in formulating the guidelines, the Commission has provided sentencing courts with assistance in determining what types of factors it was unable to consider adequately in setting offense levels for substantive offenses. *See* U.S.S.G. § 5K2.0, p.s. Among those factors are coercion and duress, addressed in § 5K2.12, which holds in relevant part as follows:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range.... Ordinarily coercion will be sufficiently serious to warrant departure only when it involves threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. The Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence.

U.S.S.G. § 5K2.12, p.s. Defendant contends that departure was authorized "under § 5K2.12 based upon psychological coercion or duress."

Section 5K2.12 makes clear, however, the Commission's intention that a sentencing court ordinarily may depart on the basis of coercion and duress only "when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful conduct of a third party...." U.S.S.G. § 5K2.12, p.s. Defendant has introduced no evidence that he was physically coerced into committing his offense or that he did so under threat of injury to his person or property, and probably "[t]hat is all the guideline on coercion or duress can reasonably be interpreted to cover." *United States v. Pozzy*, 902 F.2d 133, 139 (1st Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990); *see also United States v. McCrary*, 887 F.2d 485, 488–89 (4th Cir.1989) (finding that, absent threat of physical injury, de-

fendant's fear of wrath of coconspirators does not justify application of § 5K2.12).

More important, defendant has introduced no evidence that co-defendant Ramey engaged in anything more substantial than run-of-the-mill persuasion—just words and enticing, as opposed to threatening, words at that—in enlisting Russell in the crime of armed robbery, which like many crimes involved one actor leading and encouraging another. The record supports no duress or coercion upon which section 5K2.12 could apply to justify a reduction in sentence. Whether or not psychological or emotional coercion might ever be serious enough to overcome the limited reach of § 5K2.12, the unexceptional conduct of co-defendant Ramey was not enough. And, we note that the district judge made no finding of "coercion" or "duress" and that words like "force," "compel," and "threatened" are conspicuously absent from the record. The district court said only that Russell "was talked into this thing."

Defendant argues that "while [Russell] was not faced with the threat of physical harm[,] he certainly perceived his situation as being virtually the same. As Dr. Most pointed out, under these circumstances, [Russell's] need to be compliant may override is [*sic*] own judgment." Therefore, defendant's argument does not rely on perceived threats from co-defendant Ramey, but on the defendant's reduced capacity to resist persuasion, caused by his dependent personality disorder. Reduced capacity as a mitigating factor, therefore, is considered next.

### 2. *Diminished Capacity*

▮ Russell contends that his affliction with a dependent personality disorder is a factor unconsidered by the Commission when it formulated the guidelines. But the Commission has considered the potentiality of defendants with emotional or mental problems. While we cannot say that the Commission considered each and every sort of condition, it is enough that the subject generally was considered. In section 5H1.-3, the Commission stated that "[m]ental

and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines, except as provided in the general provisions of Chapter Five." U.S.S.G. § 5H1.3, p.s. Among the relevant general provisions of Chapter Five are the section on coercion and duress, discussed *supra,* and section 5K2.13, covering "diminished capacity." Section 5K2.13 provides as follows:

> If the defendant committed a *non-violent offense* while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13, p.s. (emphasis added).

When the two sections are read together, we think that the guidelines show that the Commission considered the effect of emotional conditions on culpability and decided that ordinarily mental and emotional conditions are irrelevant to mitigate defendants' culpability, but that in extraordinary instances the conditions may be relevant—but then only if the defendant committed a nonviolent crime. *See United States v. Rosen,* 896 F.2d 789 (3d Cir.), *reh'g denied* (Mar. 21, 1990).[3]

■ The crime here, armed robbery, is a crime of violence regardless of whether the weapon Russell carried into the bank was fired or even loaded: the use or threatened use of force is an element of the offense. *See Gonzalez–Lopez,* 911 F.2d at 548 ("Application Note 1 to section 4B1.2 specifically states that the term 'crime of violence' includes the crime of robbery.... No doubt the Commission recognized that robbery by its nature involves the threat of

violence."); *United States v. Spedalieri,* 910 F.2d 707 (10th Cir.1990); *Rosen,* 896 F.2d 789; *United States v. Maddalena,* 893 F.2d 815 (6th Cir.1989), *reh'g denied* (Feb. 28, 1990)). Therefore, no departure is allowed.

### B. *Likelihood of Recidivism*

■ The district judge said at the second sentencing hearing that in addition to defendant's dependent personality disorder, departure was justified because "the court is confident that the defendant will not get involved again in any type of criminal activity...."

Likelihood of recidivism is a factor considered by the Commission in formulation of the criminal history categories which, along with the offense level, determine the applicable guideline range. *See* U.S.S.G. Ch. 4, Pt. A, intro. comment. Moreover, the Commission has acknowledged that in forming broad categories of past criminal conduct, it could not guarantee that likelihood of recidivism will have been considered adequately in all cases. *See* U.S.S.G. § 4A1.3, comment. For this reason, sentencing courts are authorized to depart from the guidelines "in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism...." *Id.*

The guidelines provide a specific limitation, however, on the power of the courts to depart on the basis of likelihood of recidivism. Section 4A1.3 holds in relevant part:

> The lower limit of the range for a Category I criminal history is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for a Category I criminal history on the basis

**3.** Even if section 5K2.13 were not a limit on section 5H1.3, the district court did not find that defendant's openness to suggestion was extraordinary, that is, plainly outside of the broad range of resistance to persuasion that humans as a group might usually be expected to display. The strongest statement the sentencing judge made on this point was, "I have never had a

case in which one defendant was that dependent and controlled by the other defendant." This could be true without Russell's weakness being truly extraordinary. When district courts depart from the guidelines, they should be painstaking in building a record and in making specific findings to justify their decisions.

of the adequacy of criminal history cannot be appropriate.

U.S.S.G. § 4A1.3, p.s. Defendant in this case has no criminal history and accordingly was placed in criminal history category I. As a result, the district court was unauthorized to consider likelihood of recidivism as a mitigating factor justifying departure; likelihood of recidivism was considered adequately in determining the appropriate criminal history category.

### III.

We conclude that the district court was unauthorized to depart downward from the applicable guideline range by any mitigating factors indicated in the sentencing hearings and briefs by the parties. This court therefore VACATES again the sentence imposed by the lower court, and REMANDS for sentencing within the applicable guideline range.