UNITED STATES of America,
Plaintiff–Appellee,

v.

Curtis Charles FAIRMAN,
Defendant–Appellant.

No. 90–8909.

United States Court of Appeals,
Eleventh Circuit.

Dec. 4, 1991.

Sheila R. Tyler, Federal Defender Program, Inc., Atlanta, Ga., for defendant-appellant.

Thomas A. Devlin, Jr., Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

DUBINA, Circuit Judge:

Curtis Charles Fairman ("Fairman"), appeals his sentences of 33 months for bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and five years for use of a firearm

during a crime of violence in violation of 18 U.S.C. § 924(c). For the reasons which follow, we affirm Fairman's sentences.

## I. BACKGROUND

Fairman began working as a teller at a Michigan bank in 1959. Throughout his employment with the bank, Fairman received "superior" or "meets expectations" employment evaluations. He was eventually promoted to branch manager.

Despite his successful 29 year career in the banking profession, Fairman resigned from the bank in 1989 to open his own business. He took his profit sharing money and severance pay, combined it with his family's life savings, and paid $215,000 to purchase a furniture store franchise in Norcross, Georgia. In the one year that the store was open, Fairman lost an estimated $200,000. By the time the store closed, Fairman had incurred almost $5,000 in overdue bills and had lost his entire life savings. Fairman became desperate for funds and felt as if the business failure had been entirely his fault. Consequently, he entered the Lawrenceville branch of the First National Bank of Atlanta, Georgia, and gave a teller a note declaring, "Don't do nothing stupid. Give me $5,000. Don't get nobody killed I got a gun." Fairman then displayed a handgun in the waistband of his trousers. The teller tendered the cash to Fairman and then he left the bank. Later, Fairman was arrested.

Fairman pled guilty to one count of bank robbery and one count of possession of a firearm in the commission of a crime of violence. At his sentencing hearing, Fairman requested a downward departure based on his mental and emotional condition at the time of the bank robbery. In support of his request, Fairman proffered the results of a psychiatric evaluation and letters from his family attesting to his prior good conduct.

The district court denied Fairman's motion for a downward departure by explaining:

I am going to deny the downward departure, Miss Tyler [Fairman's attorney]. I am troubled by the fact that a loaded handgun was used in the commission of the offense, even though it does seem to characterize, at least under some of the decisions a crime of bank robbery as a non-violent offense, that no violence was actually used. And I think that the fact of diminished capacity, which is specifically dealt with in the guidelines, would apply to this case. I recognize your arguments, I recognize that this activity is completely aberrant when viewed in the total context of the defendant's life and previous work history and his previous personal background, and I also read carefully the psychiatrist's report where he indicated that he was suffering from severe depression and from diminished capacity, but I think that the fact that this was a violent crime that ran the risk of violent injury or death to other people somewhat argues against any further downward departure from the guideline range as indicated.

I was very troubled by this case. This was totally out of character with anything in your history, your background, what appeared to be your personal values, your work habits. You had been an exemplary citizen, and it is a troubling case to me because of the length of sentence that I am constrained to impose, but that is the law and I consider it my function to apply the law as I see it.

(R2–41). The district court then sentenced Fairman to 33 months for the bank robbery and five years for the use of the firearm; the sentences to run consecutively.

## II. DISCUSSION

█ The Sentencing Reform Act prohibits generally a defendant from appealing a sentencing judge's refusal to grant a downward departure from the sentencing guideline range. *United States v. Fossett,* 881 F.2d 976, 979 (11th Cir.1989); *see also* 18 U.S.C.A. § 3742(a)(3) (West Supp.1991) (allowing defendant to appeal only an upward departure from the guideline range). Nonetheless, review is available for a sentencing challenge based upon the judge's belief that he or she had no authority to depart from the sentencing guideline

range. *Fossett,* 881 F.2d at 979. That is precisely what Fairman argues in this appeal. Fairman maintains that the district court mistakenly believed that it lacked authority to base a downward departure upon Fairman's mental and emotional condition.[1]

In reading the sentencing colloquy, it appears that the district court felt constrained by the guidelines. The district court specifically stated that it felt "constrained to impose" the sentences allotted, "but that is the law." Therefore, since the district court felt constrained by the guidelines, we must determine whether it had the authority to depart.

■ The government argues that this case is identical to *United States v. Russell,* 917 F.2d 512 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1427, 113 L.Ed.2d 479 (1991). In *Russell* the defendant argued that the Sentencing Commission did not consider emotional conditions while formulating the guidelines. *Id.* at 516. Our actual holding in *Russell* was that the Sentencing Commission did consider mental and emotional conditions while formulating the guidelines. *Id.* Moreover, we found that the Commission determined that mental and emotional conditions should not be considered as a mitigating factor if the defendant committed a violent crime. *Id.* at 517. Since Russell committed armed bank robbery, a crime of violence, his emotional condition could not be considered as a mitigating factor during sentencing. *Id.*

■ Fairman argues, however, that 18 U.S.C.A. § 3661 prohibits any limitation being "placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence." Therefore, Fairman contends the district court must be allowed to consider his emotional condition, otherwise there is a limitation being placed on the information available for consideration by the district court. Further, Fair-

man argues that *Russell* does not apply because in *Russell* we were only interpreting the guidelines, and we did not reach the question of whether the guidelines were inapposite of the statutory authority of § 3661.

While we agree with Fairman that *Russell* does not completely control this case, we do not agree that the guidelines have established an unauthorized limitation on the acceptable information that the district court may receive and consider during the sentencing hearing.

Title 18 U.S.C.A. § 3661 states that no limitation may be placed on the information that a district court may receive and consider during the sentencing phase. Yet, at the same time, 28 U.S.C.A. § 994(d) (West Supp.1991), requires the Sentencing Commission to place limits on the receivability and consideration of information pertaining to eleven different areas such as age, education, mental and emotional condition, etc. Section 994(d) states, "The Commission shall assure that the guidelines and policy statements are entirely neutral as to race, sex, national origin, creed, and socioeconomic status of offenders." Further, § 994(e) also states, "The Commission shall assure that the guidelines and policy statements, in recommending a term of imprisonment or length of a term of imprisonment, reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant."

At first glance, 18 U.S.C.A. § 3661 and 28 U.S.C.A. § 994 appear inapposite, and it seems as if they cannot coexist. Section 3661 prohibits any limitation being placed upon what the district court may consider during sentencing, whereas § 994(d) and (e) specifically place limits upon what the district court may consider. As is often the case when Congress drafts complex statutes, the various provisions do not fit together with surgical precision. While a statute's meaning may be clear as to most situations, cases may arise where two provisions in the same statute, or in two sepa-

---

1. Fairman also requested a downward departure based upon his background. Because the

guidelines are so clear as to this issue, we affirm the district court without discussion.

rate statutes, apparently conflict. It is then up to the courts to make sense of the inconsistencies.

██ Normally when there is an ambiguity, the court must consider the statute[s]' legislative history. *See Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *see also Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976) (legislative history considered even though statutory language appeared unambiguous on its face). In this case, however, we need look only to another statute to resolve the apparent inconsistency. Title 18 U.S.C.A. § 3553(b) (West Supp.1991) states as follows:

> The court shall impose a sentence of a kind, and within the range, referred to in subsection (a)(4) [the sentencing guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

By reading § 3661 together with § 3553(b) it becomes clear that § 3661 is designed to make sure that no limitation is placed on information available to the district court, as long as the information was not already considered by the Sentencing Commission in formulating the guidelines. Limitations can be placed on the district court's consideration of information which has already been considered by the Sentencing Commission, because technically the district court has considered this information by applying the guidelines.[2]

This interpretation of the statute is strengthened by the Sentencing Commission's, *Guidelines Manual,* § 1B1.4 (Nov. 1990), which parallels the language of § 3661. The background commentary to this guideline section explains that, "A court is not precluded from considering information that the guidelines do not take into account." U.S.S.G. § 1B1.4, comment. (backg'd.) The commentary reiterates the point that § 3661's purpose is to make sure that any relevant information or circumstance not formerly taken into account by the guidelines will still be available for the district court's consideration.[3]

Hence, § 3661 is a safety net. It is designed to make available for sentencing any relevant information not considered by the guidelines.

██ This is where our holding in *Russell* becomes relevant. In *Russell,* we held that mental and emotional conditions were considered while formulating the guidelines. 917 F.2d at 516. Moreover, we found that the Sentencing Commission determined that mental and emotional conditions could not be considered as a mitigating factor if the defendant committed a violent crime. Since Fairman committed armed bank robbery, a crime of violence, his mental and emotional condition could not be considered as a mitigating factor during sentencing.

### III. CONCLUSION

Since mental and emotional conditions were considered by the Sentencing Commission, § 3661 is not applicable. The district court had no authority to depart from the guidelines. Accordingly, we affirm Fairman's sentences.

AFFIRMED.

**2.** We note that *United States v. Boshell,* 728 F.Supp. 632 (E.D.Wash.1990), holds that the discretion granted the district court by 18 U.S.C.A. § 3661 is not and cannot be taken away by 28 U.S.C.A. § 994 or the sentencing guidelines. *Id.* at 636. The court in *Boshell* based its decision on the requirement that the Commission's guidelines must be consistent with the provisions of Title 18, which includes § 3661. The court in *Boshell* failed to consider that Title 18 also includes § 3553(b). When § 3661 and § 3553(b) are read together, the Commission's guidelines are consistent with the provisions of Title 18.

**3.** This court adheres to the principle that the construction of a statute by those charged with its execution will be followed unless there are compelling indications that it is wrong. *Greater Orlando Aviation Authority v. F.A.A.,* 939 F.2d 954, 958 (11th Cir.1991). The Sentencing Commission's interpretation of § 3661 is reasonable and Fairman has proffered nothing to indicate that it is wrong.