**UNITED STATES of America, Plaintiff–Appellant, Cross–Appellee,**

v.

**Akbar SALEMI, Defendant–Appellee, Cross–Appellant.**

No. 92–6850.

United States Court of Appeals, Eleventh Circuit.

July 25, 1994.

---

James Eldon Wilson, U.S. Atty., Louis V. Franklin, Sr., Asst. U.S. Atty., Montgomery, AL, for appellant.

Paul R. Cooper, Cooper and Cooper, Montgomery, AL, for appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and SMITH *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

Because the district court improperly made two downward departures in sentencing, and refused to apply two sentencing enhancements, we vacate the sentence and remand for resentencing.

## FACTS

On December 26, 1990, at approximately 7 p.m., in Alabama, Sheena Holloway left her six-month-old infant daughter, Dana Christine Holloway, with a house guest, Patricia Shaw. Later that evening when Holloway returned, Shaw and the baby were gone. Holloway also noticed that a photograph of her, a photograph of her automobile, and the baby's birth certificate, diaper bag, and clothing were missing.

The investigation of the kidnapping led to Shaw's husband, Akbar Salemi, a resident of Miami, Florida. When a Federal Bureau of Investigation (FBI) agent interviewed Salemi at his job and inquired about the whereabouts of his wife, Salemi feigned ignorance about her whereabouts, but promised to notify the agent immediately if she contacted him. Promptly after being interviewed, Sa-

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designa-

tion.

lemi fled to Kissimmee, Florida, with Shaw and the baby.

On January 8, 1991, law enforcement officers arrested Shaw who then led the authorities to a motel where they arrested Salemi with the baby. During the post-arrest interview, Salemi admitted that he had lied to the FBI agent to protect Shaw and the baby.

## PROCEDURAL HISTORY

One day after his trial on July 23, 1991, the district court granted Salemi's motion for mistrial because both the prosecution and defense expert witnesses agreed that Salemi's mental condition had deteriorated to such a point that he was no longer competent to stand trial. On June 23, 1992, at a subsequent jury trial, the jury rejected Salemi's insanity defense finding him guilty of kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1), (2).

After reviewing the Presentence Report (PSR), the district court decreased Salemi's offense level to 15 producing a sentencing range of 18 to 24 months. The government objected to the court's factual findings that no obstruction of justice occurred and the baby was not a vulnerable victim. The government also objected to the district court's departure downward based on Salemi's diminished capacity and attempted avoidance of a perceived greater harm.

## ISSUES

We address the following issues:

(1) Whether Salemi's diminished capacity warranted a downward departure;

(2) whether the district court properly departed downward because Salemi attempted to avoid a perceived greater harm;

(3) whether the six-month-old baby was a vulnerable victim; and

(4) whether Salemi obstructed justice.

## STANDARD OF REVIEW

An appellate court's application of the United States Sentencing Commission *Guidelines Manual* presents questions of law and fact. The district court's findings of fact are reviewed under the clearly erroneous standard, while the reviewing court's application of law to those facts is subject to *de novo* review. *United States v. Weaver,* 920 F.2d 1570, 1573 (11th Cir.1991).

## DISCUSSION

### A. Downward Departure for Diminished Capacity

Relying on § 5K2.13 of the Sentencing Guidelines, the district court reduced Salemi's offense level due to his diminished mental capacity. Section 5K2.13 provides as follows: "If the defendant committed a nonviolent offense while suffering from significantly reduced mental capacity ... a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense...." The district court concluded that Salemi suffered a mental defect that made him "particularly susceptible to the influence of females that he trusted." The court further concluded that Salemi was a nonviolent person who probably believed he was protecting the baby.

The government contends that the district court erroneously departed downward based upon Salemi's diminished mental capacity because the plain language of section 5K2.13 explicitly excludes violent offenders—such as kidnappers—thereby rendering Salemi ineligible for a downward departure under this provision.

In *United States v. Russell,* 917 F.2d 512 (11th Cir.1990), *cert. denied,* 499 U.S. 953, 111 S.Ct. 1427, 113 L.Ed.2d 479 (1991), this court determined that the Sentencing Commission had considered the mental or emotional condition of a defendant when the Commission stated that those conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines, except as provided in the general provisions of chapter 5. U.S.S.G. § 5H1.3, p.s.; *Russell,* 917 F.2d at 517. The Sentencing Commission specifically considered diminished capacity in U.S.S.G. § 5K2.13, p.s. *Russell,* 917 F.2d at 517.

■ While it is undisputed that Salemi had a history of mental illness, the guidelines and the case law are clear in stating that mental and emotional conditions should not be considered if the defendant committed a violent crime. *United States v. Fairman,* 947 F.2d 1479 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1503, 117 L.Ed.2d 642 (1992); *Russell,* 917 F.2d at 517.

■ Kidnapping is a violent crime. Section 4B1.2, U.S.S.G., defines crime of violence as any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." Application Note 2 of U.S.S.G. § 4B1.2 includes kidnapping in its listing of crimes that are crimes of violence. The Commission recognized that kidnapping inherently involves the threat of violence.

■ The district court erroneously focused on Salemi rather than the crime itself, when it stated, "you have to consider ... the individual committing the offense in deciding whether it is a crime of violence." This conclusion is in direct conflict with Application Note 2 of U.S.S.G. § 4B1.2 which states that "the conduct of which the defendant was convicted is the focus of inquiry."

In *Russell,* despite the fact that the gun was neither fired nor loaded, this court held the bank robbery to be a crime of violence. This case is analogous to *Russell* in that in both cases the defendants contended that their dependent personality disorders warranted a downward departure due to diminished capacity. The district court in *Russell,* as in this case, agreed and departed downward from the adjusted guideline range. On appeal, this court vacated and remanded *Russell,* holding that mental and emotional conditions of the defendant cannot be considered as a mitigating factor when the offense of conviction is a crime of violence.

Because kidnapping is a crime of violence, we hold that the district court erred in its downward departure based upon Salemi's diminished mental capacity.

**B. Downward Departure for Avoidance of Perceived Greater Harm**

■ The district court also departed downward pursuant to U.S.S.G. § 5K2.11, p.s., which states in pertinent part: "Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct...."

No evidence presented to the district court supports a downward departure under section 5K2.11. Although the district court suggested that the baby may have been in an abusive environment, the district court admitted that no evidence existed that the defendant helped kidnap the baby to protect her from an unsafe environment. The court stated the following: "[Salemi] has never told me that and I don't have a record that he did. But his conduct was consistent with that sort of a thought."

Thus, the undisputed evidence only showed that Salemi knew his wife was bringing a baby to their home. Shortly after her arrival in Miami, Salemi lied to the FBI to help hide the baby. Salemi knew the baby had been kidnapped and that law enforcement officers were seeking his wife. Nevertheless, he quit his job, fled from his home city, and helped keep the baby hidden from authorities. Consequently, we hold that no factual basis exists for a downward departure under section 5K2.11.

**C. Vulnerable victim due to age**

■ The district court also determined that the six-month-old baby was not a vulnerable victim within the meaning of section 3A1.1. Section 3A1.1 of the Sentencing Guidelines states: "If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels." The determination of vulnerability is a factual finding which is entitled to due deference on review. *United States v. Rocha,* 916 F.2d 219, 244 (5th Cir.1990), *cert. denied,* 500 U.S. 934, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991).

The PSR appropriately added two levels to Salemi's adjusted offense level because the

victim in this case was a six-month-old baby. *See* U.S.S.G. § 3A1.1. The district court declined to accept the PSR's recommendation because the court believed that Salemi's mental and emotional condition clouded his ability to perceive the baby's peculiar vulnerability. Moreover, since the baby was not harmed, the court declined to apply the enhancement. In reaching its conclusion, the district court erroneously relied more on Salemi's characteristics rather than the characteristics of the baby. The Guidelines clearly focus on the victim's unusual personal vulnerability.

In *United States v. Creech,* 913 F.2d 780, 782 (10th Cir.1990), the court held that section 3A1.1 should be utilized when the criminal act is directed against the young, the aged, the handicapped, or if the victim is chosen because of some unusual personal vulnerability. In *United States v. Boise,* 916 F.2d 497, 506 (9th Cir.1990), *cert. denied,* 500 U.S. 934, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991), the court upheld the vulnerable victim adjustment because the victim was six weeks old. In *Rocha,* 916 F.2d at 244–45, the court upheld the vulnerable victim adjustment because the victim was eighteen years old, and because the trial court observed during the trial that the victim was still terrified about the kidnapping ordeal. We agree with these decisions and reverse the district court's finding that the baby in this case was not a vulnerable victim.

D. Obstruction of Justice

■ The district court also declined the recommendation of the PSR calling for a two-level increase in Salemi's offense level for obstructing justice. Section 3C1.1 of the Sentencing Guidelines states: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation,

prosecution or sentencing of the instant offense, increase the offense level by 2 levels."

The government argues that the PSR was correct in its recommendation that Salemi receive an enhancement of two levels because he obstructed justice, and that the district court erred in refusing to adopt the PSR recommendation.

The district court based its conclusion on U.S.S.G. § 3C1.1 Application Note 1 which states that the section should not punish a defendant for denying guilt to a probation officer.** Under this provision, false statements should be evaluated in a light most favorable to the defendant. U.S.S.G. § 3C1.1 comment (n.1). Focusing only on Salemi's false statement to the FBI, the district court concluded that Salemi's false statements were merely denials of guilt and exculpatory statements; therefore, they were exempt from the provisions of section 3C1.1.

Salemi's statements were not merely denials of guilt or purely exculpatory statements, but were purposely made to impede and misdirect the investigation in its infancy stage so that Salemi could prevent his wife's capture and the baby's recovery.

Because Salemi intentionally misled and impeded the investigation, the district court erred when it did not enhance Salemi's adjusted offense level for obstruction of justice.

Accordingly, we affirm the convictions, vacate the sentences, and remand this case to the district court for resentencing.

AFFIRMED in part, VACATED in part, and REMANDED.

---

+** The district court also stated that Application Notes 3(g) and 4(b) appeared inconsistent. Application Note 3(g) states that "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation" constitutes obstruction of justice warranting a two-level sentence enhancement. Application Note 4(b) states that "absent a separate count of conviction for such conduct ... making false statements, not under oath, to law enforcement officers" does not warrant a sentence enhancement unless Application Note 3(g) applies. These two provisions are compatible because they merely indicate that a statement not made under oath which does not obstruct justice does not warrant a sentence enhancement under U.S.S.G. § 3C1.1.