USCA1 Opinion

 

 August 23, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2289 LOUIS ROBERT PARENTE, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ Louis Robert Parente on brief pro se. ____________________ Donald K. Stern, United States Attorney, and Duane J. Deskins, ________________ _________________ Assistant United States Attorney, on brief for appellee. ____________________ ____________________ Per Curiam. In 1991, Louis Robert Parente pled ___________ guilty to armed bank robbery, and was sentenced to a prison term and ordered to pay restitution and, to the extent restitution was not paid, a fine. He did not appeal his sentence, but in 1993 filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. 2255. The district court denied his motion, and Parente now appeals. We affirm. Only two issues are properly before us. The first is Parente's claim that his attorney rendered him ineffective assistance of counsel by failing to argue at sentencing that he did not have the ability to pay a fine or restitution. The second is his claim that his attorney rendered him ineffective assistance of counsel at sentencing by failing to argue for a downward departure on the grounds that Parente suffered from "divorce traumatic stress syndrome" and that his crime constituted "aberrant behavior."1 Although ____________________ 1. Parente raised other claims below, which he appears to have abandoned on appeal. Those claims were that Parente's attorney had rendered ineffective assistance of counsel because he failed to correct or clarify certain statements in the presentence report; that Parente should have been given the retroactive benefit of amended U.S. Sentencing Guideline 3E1.1, which permitted an additional reduction in base offense level for acceptance of responsibility if certain conditions were met; that, for various reasons, a prior state conviction should not have been included as a criminal conviction in his presentence report; that the imposition of both restitution and a fine on Parente constituted "double jeopardy"; and that Parente's counsel was ineffective because he had not requested that a competency hearing be held to determine whether Parente was mentally ill at the time he committed the crime. -2- Parente raises new claims on appeal, we decline to consider those claims. Our review of the record shows that declining to consider the new claims would not result in any "gross miscarriage of justice" and that the new claims are not "so compelling as virtually to insure appellant's success." See ___ Hernandez-Hernandez v. United States, 904 F.2d 753, 763 (1st ___________________ _____________ Cir. 1990) (citing Johnston v. Holiday Inns, 595 F.2d 890, ________ _____________ 894 (1st Cir. 1979)). Parente has alleged ineffective assistance of counsel. Accordingly, he must show that his counsel's representation of him at sentencing fell below an objective standard of reasonableness. Strickland v. Washington, 466 __________ __________ U.S. 668, 687-88 (1984). He must also show that the deficient performance prejudiced him, i.e., that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687, 694. Parente bears a very ___ heavy burden of proof, and there is a strong presumption that counsel's representation was reasonable. Lema v. United ____ ______ States, 987 F.2d 48, 51 (1st Cir. 1993). ______ I. Ability to Pay ______________ Parente claims that his attorney should have argued at sentencing that Parente could not pay a fine or restitution in the amount ordered by the court. The district court imposed a fine of $74,410 and restitution of $74,410, -3- but ordered that the fine be remitted dollar for dollar to the extent that Parente actually paid restitution. Although the amount of the fine and restitution would total $148,820, Parente now appears to accept the view that, in reality, he was only expected to pay a single sum of $74,410. But he claims that his counsel should have argued that he could not pay a fine or restitution in that amount since the presentence report (PSR), relying on a financial statement by Parente, showed that he had a negative net worth of approximately $23,000; it also indicated a negative monthly cash flow of some $500. Parente also argues that he received only half of the armed robbery proceeds of $74,410, an argument for which there is no record support.2 The PSR gives other information that bears on the question of Parente's ability to pay the $74,410 restitution award. On June 29, 1988, five days after the robbery to which he pled guilty, Parente began depositing money in a Rhode Island bank, and on that day he also opened a safety deposit box at that bank. By February 8, 1989, Parente had deposited $35,250 into his accounts at the bank. He closed ____________________ 2. Parente cites statements apparently made in confessions by him and Paul Aubin, his co-defendant. Parente's counsel filed a motion to suppress Parente's confession, however, and we infer from the record that a similar motion was filed by Aubin. Having uncovered information tending to corroborate defense claims that the confessions were coerced by police officers, the government chose not to challenge the motion to suppress, and neither Parente nor the government has made either confession part of the record. -4- them on February 27, 1989, but the PSR does not indicate what Parente then did with the money. On June 29, 1988, Parente had also used $13,000 in cash to buy a truck. Parente's financial statement listed a "1977 Jeep AMC Pick-Up" worth $700 as an asset, but the PSR does not say whether that jeep was the "truck" Parente bought in 1988 for $13,000 in cash, or, if it was not, what happened to that truck. According to the PSR, Parente graduated from technical high school and later received an Associate in Science degree in Architectural Drafting Technology from the New England Institute of Technology; in addition, Parente's estimate was that he had received a net average wage of $15,000 per year ___ as a self-employed subcontractor, apparently during the three-year period from 1988-90, although that work became slower in 1991. The sentencing transcript contains other pertinent information. When the question of restitution arose, Parente's counsel informed the court that there had been a civil action against Parente for the $74,410 taken in the robbery, that he and Parente's counsel in the civil case had advised "that they submit the judgment in that regard," and that he believed that "that's been accomplished in a sense by a civil judgment. If it has not been already done, it will be done, . . . ." Counsel's comments appear intended to argue to the court that, since restitution would essentially -5- be made through a civil judgment against Parente, there was no need for the court to require restitution at sentencing. The court seems to have understood counsel to have argued for the somewhat different proposition that the recommended amount of restitution (or restitution and fine) should in no event exceed $74,410. The court expressly asked for a statement of Parente's assets and was referred to the section of the PSR entitled "Defendant's Ability to Pay." That section stated Parente's negative net worth and negative monthly cash flow. Presumably after reviewing that information, the court said that it had been "troubled by the absence of explanation of what happened to the money [stolen from the bank]," and that it believed that restitution should take priority over a fine. The government recommended that $74,410 be assessed as restitution, which would "spill over into a fine" if Parente were unable to pay it, contemplating apparently the immediate payment of the entire amount of restitution. In response, the court indicated its preference for imposing a fine of $74,410 and restitution of $74,410, "but with the understanding that the priority is to be given to the restitution and that the fine will be remitted to the extent that restitution has actually been paid." Its intent was to "excuse the fine to the extent that restitution is actually paid." If Parente did not immediately pay the full restitution, the court instructed him to pay restitution -6- during the 36-month period of supervised release following his prison term, according to a schedule set up by the chief probation officer. The court also waived interest on the fine it had imposed. In light of the facts recounted above, we think that Parente has not met his heavy burden of showing that his counsel's failure to argue ability to pay was ineffective assistance of counsel. The court itself raised the question of Parente's ability to pay, and apparently consulted the details in the PSR about Parente's assets. The prosecutor also referred to it, suggesting a fine if Parente could not make restitution. Strictly speaking, therefore, there was no need for counsel to raise the issue -- it was already under consideration. Moreover, the court showed concern about Parente's failure to explain what had happened to the funds stolen from the bank, suggesting its skepticism about Parente's alleged negative net worth, and manifesting its belief that Parente should restore the sums he had taken. Accordingly, as the government contends, arguing that Parente could not pay a fine or restitution might have backfired by highlighting Parente's failure to account for the funds despite his apparent acceptance of responsibility. Doing so might have given the court cause to increase Parente's prison ________ term or the amount of the fine. Finally, it is unlikely that an argument that Parente had no ability to make restitution -7- would have been successful. The court permitted Parente to pay restitution in installments after his release from jail during the three-year period of his supervised release. The PSR suggested that, if Parente returned to his prior self- employment, he might be expected to net $15,000 per year during that period, for a total of $45,000. It also indicated that, in 1988-89, Parente had significant assets which had not been accounted for, i.e., $35,250 in cash and a truck valued at $13,000. Those assets, together with the sums that Parente reasonably could be expected to earn after his release from prison, would have been sufficient to make restitution.3 Consequently, Parente's counsel could reasonably have decided that an inability to pay argument would not succeed. He apparently made the only good argument he had -- that the court should not require any restitution since a civil judgment already was pending or had entered which effectively required Parente to make such restitution. Given all of the above facts, Parente's counsel cannot be said to have rendered ineffective assistance because he did not argue that Parente had no ability to pay a fine/restitution of $74,410. II. Downward Departure __________________ A. Divorce Traumatic Stress Syndrome _________________________________ ____________________ 3. Further evidence of Parente's financial resources is that he retained his own defense counsel rather than obtaining court-appointed counsel. -8- Parente claims that his counsel was ineffective because he did not argue for a downward departure on the ground that Parente suffered from "divorce traumatic stress syndrome." Parente adverts only perfunctorily to this claim in his appellate briefs, presenting no developed argumentation on the point.4 Therefore, he has essentially waived the claim. See United States v. Zannino, 895 F.2d 1, ___ _____________ _______ 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990). We note ____________ that, in any event, the Sentencing Guidelines applicable at the time Parente was sentenced provided that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines," see U.S.S.G. Manual 5H1.3 (1990), with certain ___ exceptions that would not have applied to Parente. See also ___ ____ United States v. Russell, 917 F.2d 512, 516 (11th Cir. 1990), _____________ _______ cert. denied, 499 U.S. 953 (1991) (convicted armed bank _____________ robber could not justify downward departure on the ground that he had a "dependent personality disorder"). B. Aberrant Behavior _________________ Parente also says that counsel rendered ineffective assistance because he did not argue for a downward departure ____________________ 4. Parente's submissions to the district court alleged that he had a "syndrome" caused by the marital conflict between his parents and by his lack of relationship with his father; this syndrome allegedly left him "vulnerable . . . to be[ing] easily influenced by others due to a lack of self-esteem, confidence and economic ability." -9- on the ground that Parente's commission of the crime was "aberrant behavior." On appeal, Parente's argument appears to be that Paul Aubin, his co-defendant, whose special knowledge about automated teller machines permitted him to successfully rob those machines, induced Parente to commit the robbery by communicating that knowledge to him. Parente also appears to argue that the armed robbery to which he pled guilty was his only crime. Parente's arguments are meritless. First, at the time Parente was sentenced, Sentencing Guideline 5K2.12 permitted downward departures for crimes committed under "coercion and duress," but not the type of inducement or enticement alleged here. Section 5K2.12 permitted a court to depart downward if a defendant had committed an offense "because of serious coercion, blackmail or duress," explaining that "[o]rdinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency." Parente does not say that Aubin threatened him with physical injury or substantial damage to property, but essentially only that Aubin induced him to commit the crime by giving him the information that permitted him to do so successfully. Thus, it clearly was not ineffective assistance of counsel -10- for Parente's counsel not to argue for a downward departure. See United States v. Russell, supra, 917 F.2d at 516 ___ ______________ _______ _____ (downward departure not authorized under 5K2.12 where the defendant, who had been convicted of armed bank robbery, introduced no evidence that he was physically coerced into committing his crime or that he did so under threat of injury to his person or property, which is "all the guideline on coercion or duress can reasonably be interpreted to cover") (citing United States v. Pozzy, 902 F.2d 133, 139 (1st Cir.), _____________ _____ cert. denied, 498 U.S. 943 (1990)). ____________ Second, the record shows that the armed robbery to which Parente pled guilty was not an isolated criminal offense, as he suggests. The PSR shows a 1984 conviction for receiving stolen goods. (Although Parente challenged the validity of that conviction below, he has not done so on appeal.) In addition, the PSR states that, in 1989, after committing the robbery at issue here, Parente was charged with conspiracy to commit robbery, possession of a firearm, and carrying a firearm in connection with an apparent plan to rob another automated teller machine. References in Parente's submissions below indicate that he was later convicted of that charge in state court. Thus, Parente's counsel would have had no factual basis for arguing for a downward departure on the ground that Parente's commission of armed robbery was an isolated offense. Even had factual -11- grounds for such an argument existed, however, the court could not have departed downward. See U.S.S.G. Manual ___ 4A1.3 ("The lower limit of the range for a Category I criminal history is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for a Category I criminal history on the basis of the adequacy of criminal history cannot be appropriate."). Consequently, counsel's failure to argue for a departure downward on the ground of "aberrant behavior" was not ineffective assistance. Affirmed.5 _________ ____________________ 5. The facts and legal arguments having been adequately presented in the briefs and record, we hereby deny Parente's request for oral argument. See Loc. R. 34.1(a). ___ -12-