**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 04-4310

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

BRETT M. GOLD,

Defendant - Appellee.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William M. Nickerson, Senior District
Judge.  (CR-02-131-WMN)

---

Submitted:  October 5, 2004          Decided:  November 16, 2004

---

Before WILLIAMS and SHEDD, Circuit Judges, and Henry E. HUDSON,
United States District Judge for the Eastern District of Virginia,
sitting by designation

---

Reversed and remanded by unpublished per curiam opinion.

---

Thomas M. DiBiagio, United States Attorney, Stephanie A. Gallagher,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Baltimore, Maryland, for Appellant.  David B. Irwin,
IRWIN, GREEN & DEXTER, L.L.P., Towson, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

In this case, the Government appeals from a downward departure granted to a recidivous pedophile, based on the "degree of enticement" used by an undercover FBI agent. (J.A. at 100-01.) Because there was no basis for the departure, we reverse.

I.

In 1998, at the age of 28, Brett M. Gold had sex with a thirteen-year-old girl whom he had met and pursued during internet chat sessions. Gold was arrested and convicted of carnal knowledge of a minor in violation of Va. Code Ann. § 18.2-63 (Michie 2004). After serving a year in jail, Gold was released on probation.

While still on probation, Gold began having online communications with an undercover FBI agent, who was posing as a thirteen-year-old girl named Emma. Eventually, Gold, who lived in Virginia, made plans to visit Emma in Maryland so the two could have sex. Gold missed the first scheduled tryst when he encountered heavy traffic on his way from Virginia to Maryland. Gold and Emma continued chatting and e-mailing each other, and eventually the two arranged another meeting. When Gold arrived at the scheduled meeting place, he was arrested. At the time of his arrest, Gold was carrying a backpack containing, among other items, condoms, Vaseline jelly, a pair of earrings, and an envelope bearing the name Emma.

2

Gold was indicted for and pleaded guilty to a violation of 18 U.S.C.A. § 2423(b) (1996) (current version at 18 U.S.C.A. § 2423(b) (West Supp. 2004)), which makes it illegal to travel across state lines with the intent to engage in a sexual act with a minor after having been convicted of a sex offense.  At sentencing, the district court departed downward two levels from the applicable guideline range because of the "element and . . . degree of enticement," which gave the case a "coercion aspect."  (J.A. at 100-01.)

## II.

"We review the district court's factual determinations made in connection with sentencing for clear error, and review the ultimate decision to depart de novo."  United States v. Stockton, 349 F.3d 755, 764 (4th Cir. 2003) (citation omitted), cert. denied, Stockton v. United States, 124 S. Ct. 1695 (2004);  18 U.S.C.A. § 3742(e) (West Supp. 2004).  "Under the Sentencing Guidelines, a district court must ordinarily impose sentences within the range specified by the applicable guideline."  United States v. Rybicki, 96 F.3d 754, 757 (4th Cir. 1996).  "Each guideline attempts to anticipate a broad range of typical cases -- a 'heartland' -- that is representative of the circumstances and consequences of ordinary crimes of the type to which the guideline applies."  Id.  "Only if the district court determines that the circumstances and consequences of a case are 'atypical' or 'unusual' and, therefore,

3

that the case does not fall within the guideline's heartland may it . . . depart from the specified sentencing range." Id. "To determine whether a circumstance or consequence is 'atypical' or 'unusual,' and, therefore, capable of taking a case out of the applicable guideline's heartland, district courts should consider not only the Guidelines themselves, but also the Sentencing Commission's policy statements and official commentary." Id. "'Encouraged' factors are usually appropriate bases for departure." Id. at 757-58 (citations omitted).

If a defendant commits an offense "because of serious coercion, blackmail, or duress," the Guidelines encourage a court to sentence that defendant below the applicable guideline range. U. S. Sentencing Guideline Manual § 5K2.12 (2002). Nonetheless, "coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency." Id.

In this case, the district court believed that the "degree of enticement" by the FBI agent posing as a victim removed this case from the guideline's heartland and allowed the court to depart on the "encouraged" factor of "coercion" and "duress." This was error. See United States v. Russell, 917 F.2d 512, 516 (11th Cir. 1990) ("[D]efendant has introduced no evidence that [his] co-defendant . . . engaged in anything more substantial than

4

run-of-the-mill persuasion -- just words and enticing, as opposed to threatening, words at that -- in enlisting [the defendant] in the crime. . . .").  None of the agent's communications with Gold threatened him with "physical injury, substantial damage to property or [a] similar injury."  U.S.S.G. § 5K2.12.  Indeed, a review of the communications between the two shows that the agent did nothing more than play the role of a thirteen-year-old girl who was willing to meet and have sex with an older man.  (See, e.g., J.A. at  39-40, 69-75.)  The agent did not threaten, coerce, or blackmail Gold in any way.  This simply is a run-of-the-mill case of an internet predator seeking out a victim who desired to engage in sexual activity with him.  There is nothing "atypical" or "unusual" about this case warranting a departure.  Accordingly, we reverse the district court's downward departure and remand for re-sentencing within the applicable guideline range.

REVERSED AND REMANDED